SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
ANNE KRAMER (SBN 315131)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:      (617) 994-5800
Facsimile:      (617) 994-5801
*Attorneys for Plaintiff Kent Hassell,*
on his own behalf and on behalf of
all others similarly situated

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT HASSELL, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., d/b/a UBER EATS,<br><br>Defendant. | Case No. 4:20-cv-04062-PJH<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1.  FAILURE TO REIMBURSE FOR BUSINESS EXPENSES (CAL. LAB. CODE § 2802, WAGE ORDER 9-2001)<br>2.  MINIMUM WAGE (CAL. LAB. CODE §§ 1197, 1194, 1182.12, 1194.2, 1197.1, 1199, WAGE ORDER 9-2001)<br>3.  OVERTIME (CAL. LAB. CODE §§ 1194, 1198, 510, AND 554, WAGE ORDER 9-2001)<br>4.  FAILURE TO PROVIDE ACCURATE ITEMIZED PAY STATEMENTS (CAL. LAB. CODE §§ 226(A) AND WAGE ORDER 9-2001)<br>5.  UNLAWFUL AND/OR UNFAIR BUSINESS PRACTICES CAL. LAB. BUS. & PROF. CODE §§ 17200-17208) |

I.      **INTRODUCTION**

1.      This case is brought by Kent Hassell, who has worked as an Uber Eats driver in California.  Uber Eats, a division of Uber Technologies, Inc., provides on-demand food delivery services.  Uber Eats is based in San Francisco, California, and it does business across the United States and extensively throughout California.

2.      As described further below, Uber Eats has misclassified its delivery drivers as independent contractors (just as Uber Technologies, Inc. has misclassified its rideshare drivers). Uber Eats has thereby deprived its drivers, including Plaintiff Kent Hassell, of protections they are entitled to under the California Labor Code.  Based on the delivery drivers' misclassification as independent contractors, Uber Eats has unlawfully required the drivers, including Plaintiff Hassell, to pay business expenses (including, but not limited to, the cost of maintaining their vehicles, gas, insurance, phone and data expenses, and other costs) in violation of Cal. Lab. Code § 2802.  Uber Eats has also failed to guarantee and pay its drivers minimum wage for all hours worked, and it has failed to pay overtime premiums for hours worked in excess of eight hours per day or forty hours per week in violation of Cal. Lab. Code §§ 1182.12., 1194.2, 1194, 1197, 1197.1, 1198, 1199, 510, and 554.  Uber Eats has also failed to provide proper itemized wage statements that include all of the requisite information, including hours worked and hourly wages that are accessible outside the Uber Eats Application in violation of Cal. Lab. Code § 226(a). Uber Eats has also failed to provide sick leave as required by California law in violation of Cal. Lab. Code § 246.  Uber Eats' continued misclassification of its delivery drivers as independent contractors is willful misclassification in violation of Cal. Lab. Code § 226.8.  Plaintiff Hassell also brings a claim for unfair business practices under California law.  See Bus. & Prof. Code §§ 17200, *et seq.*[1]

---

[1]      Notably, a UCL claim has a statute of limitations of four years.  In contrast, claims brought under the California Labor Code have a statute of limitations of three years, and a PAGA claim has only a one year statute of limitations.  Thus, absent the ability to maintain a

3.      Indeed, in the fall of 2019, the California legislature passed a statute known as Assembly Bill 5 (or "A.B. 5"), which codified the 2018 California Supreme Court decision, Dynamex Operations W., Inc. v. Superior Court (2018) 4 Cal.5th 903, 416 P.3d1, reh'g denied (June 20, 2018), under which an alleged employer cannot justify classifying workers as independent contractors who perform services within its usual course of business.  See Cal. Lab. Code § 2750.3.  It has been widely recognized by the California legislature, including the bill's author, that the purpose and intent of this statute was to ensure that companies, including specifically Uber, stop misclassifying their workers as independent contractors.  Although Uber attempted to obtain a "carve-out" from this statute when it was enacted, it did not obtain such an exemption, and the legislature passed the statute so that it would include Uber Eats drivers. Nevertheless, Uber Eats has defied this statute and continued to classify its delivery drivers as

UCL claim, Plaintiff Hassell would lose the ability to recover for at least one year of damages on behalf of the putative class.

In addition, Plaintiff Hassell notes that absent his UCL claim as it pertains to violations of Cal. Lab. Code §§ 226.8 and 246, he would have no adequate legal remedy because none of his other legal claims would afford him damages or restitution to redress Uber Eats' willful misclassification of him as an independent contractor or its failure to provide him paid sick time. The fact that Plaintiff could have chosen to redress these harms through claims under PAGA or Cal. Lab. Code § 248.5 is not of consequence, because, at this stage, he need only show that he lacks an adequate remedy under any of the other legal claims that he did choose to bring.  See In re JUUL Labs, Inc., Marketing, Sales Practices, and Products Liability Litig., --- F.Supp.3d ---, 2020 WL 6271173, at *55 (N.D. Cal. Oct. 23, 2020) (denying defendant's motion to dismiss UCL claim based on unfair conduct for restitution and explaining that, at this preliminary stage, a plaintiff's obligation to allege that he lacks an adequate remedy at law is low where "the allegations regarding unfair conduct are not otherwise coextensive with plaintiffs' legal claims"). Even so, a PAGA claim would not provide Plaintiff an adequate remedy at law for to redress Uber Eats' willful misclassification of him because a PAGA claim is brought in the shoes of the state, whereas the UCL claim allows Plaintiff Hassell to address Uber's unfair conduct in his own right, and PAGA allows only for the recovery of civil penalties rather than actual money damages.

3
FIRST AMENDED COMPLAINT

independent contractors – in violation of the clear intent of the California legislature.  This ongoing defiance of the law constitutes willful violation of California law. [2]

4.      Uber Eats has harmed delivery drivers like Kent Hassell by these violations, as delivery drivers have struggled to support themselves without the employment protections mandated by the State of California.

5.      Plaintiff brings these claims on behalf of himself and others similarly situated pursuant to Fed. R. Civ. P. 23.  He seeks recovery of damages for himself and the class.

## II.     PARTIES

6.      Plaintiff Kent Hassell is an adult resident of Cypress, California, where he has worked as an Uber Eats driver since January 2020.  Plaintiff opted out of Uber's arbitration clause.

7.      The above-named plaintiff has brought this action on his own behalf and behalf of all others similarly situated, namely all other individuals who have worked as Uber Eats delivery drivers in California.

8.      Defendant Uber Technologies, Inc. d/b/a Uber Eats ("Uber Eats") is a corporation headquartered in San Francisco, California.

## III.    JURISDICTION

9.      This Court has jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since Defendant is a California citizen and, upon the filing of this complaint, members of the putative plaintiff class may reside in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.

---

[2]      On December 17, 2020, Proposition 22 went into effect in California, which exempts certain app-based companies from A.B. 5.  While it is possible that, as of December 17, 2020, Proposition 22 may relieve Uber Eats of its liability as alleged in this Amended Complaint, it is yet to be determined whether Uber Eats is in compliance with its requirements, and, thus, whether it may claim a defense under Proposition 22.

FIRST AMENDED COMPLAINT

## IV.    STATEMENT OF FACTS

10.     Uber Eats is a San Francisco-based food delivery service, which engages drivers across the state of California to deliver food to its customers at their homes and businesses.

11.     Uber Eats offers customers the ability to order food via a mobile phone application, which its drivers then deliver.

12.     Plaintiff Kent Hassell has driven for Uber Eats since January 2020.

13.     Although Uber Eats has classified Plaintiff (like all of its delivery drivers) as an "independent contractor," Plaintiff has actually been Uber Eats' employee under California law.

14.     Uber Eats drivers, including Plaintiff, provide a service in the usual course of Uber Eats' business because Uber Eats is a food delivery service that provides on-demand meals to its customers, and delivery drivers such as Plaintiff perform that food delivery service.  Uber Eats holds itself out as a food delivery service, and it generates revenue primarily from customers paying for the very food delivery services that its delivery drives provide.  Without delivery drivers like Plaintiff Hassell to provide the food delivery, Uber Eats would not exist.

15.     Uber Eats also requires its drivers, including Plaintiff, to abide by a litany of policies and rules designed to control the delivery drivers' work performance.  Uber Eats both retains the right to, and does in fact exercise, control over Plaintiff Hassell and other delivery drivers' work.

16.     Uber Eats delivery drivers, including Plaintiff, are not typically engaged in their own transportation business.  When delivering for Uber Eats, they wear the "hat" of Uber Eats." Customers cannot request specific Uber Eats delivery drivers; instead, Uber Eats assigns particular deliveries to drivers.

17.     Uber Eats communicates directly with customers and follows up with delivery drivers, including Plaintiff, if the customer complains that the delivery failed to meet their

expectations.  Based on any customer feedback, Uber Eats may suspend or terminate delivery drivers at its sole discretion.

18.     Uber Eats drivers are engaged in interstate commerce.  Indeed, drivers frequently transport food and beverages that originated across state lines (including food and beverages, such as sodas and chips, that are not transformed at the restaurants from which drivers deliver the meals to customers).

19.     Uber Eats does not require Plaintiff Hassell or other delivery drivers to possess any skill above and beyond that necessary to obtain a regular drivers' license.

20.     Plaintiff Hassell and other delivery drivers' tenure with Uber Eats is for an indefinite amount of time.

21.     Uber Eats provides the delivery drivers, including Plaintiff, with the primary instrumentality with which they can perform services for Uber Eats, namely the Uber Eats' software.

22.     Uber Eats sets the rate of pay for Plaintiff Hassell and other delivery drivers' services and changes the rate of pay in its sole discretion.

23.     Plaintiff and other drivers' vehicles must meet Uber Eats' quality standards, which it determines and may change at any time at its sole discretion.

24.     Uber Eats may make promotional offers to customers that reduce delivery drivers' income without consulting drivers.

25.     Uber Eats monitors Plaintiff Hassell and other deliver drivers' performance and may suspend or terminate delivery drivers who do not accept enough deliveries, cancel too many deliveries, do not maintain high customer satisfaction ratings, or engage in other conduct that Uber Eats, in its sole discretion, may determine constitutes grounds for suspension or termination.

FIRST AMENDED COMPLAINT

26.     Uber Eats has not reimbursed delivery drivers, including Plaintiff Kent Hassell, for any expenses they incurred while working for Uber Eats, including, but not limited to, the cost of maintaining their vehicles, gas, insurance, and phone and data expenses for running the Uber Eats Application.  Delivery drivers incurred these costs as a necessary expenditure to work for Uber Eats, which California law requires employers to reimburse.

27.     For example, Plaintiff Hassell has purchased approximately $90 worth of gas per week in order to fuel the 2000 Toyota Camry CE that he uses to make deliveries for Uber Eats. He would not have otherwise purchased this fuel absent his work for Uber Eats.  The purchase of fuel is necessary to his work for Uber Eats because many the pick-up and drop-off locations that are assigned to him are too far away for him to travel without a car.

28.     Similarly, Plaintiff Hassell has also had to bear the cost of replacing his tires more frequently than before he started working for Uber Eats.  Plaintiff Hassell purchased a new set of four tires in 2019 at a cost of approximately $270.  Prior to working for Uber Eats Plaintiff Hassell only had to replace his tires every few years.

29.     Plaintiff Hassell seeks reimbursement for these and other expenses he has incurred by using his vehicle to make deliveries for Uber Eats by reference to the IRS mileage reimbursement rate.[3]

---

[3]     Another court in this District has certified a class in a prior case against Uber finding that the IRS reimbursement rate could be used as "a reasonable basis of computation of vehicle-related expenses" incurred by Uber drivers.  O'Connor v. Uber Techs., Inc., 311 F.R.D. 547, 567 (N.D. Cal. 2015), rev'd and remanded on other grounds, 904 F.3d 1087 (9th Cir. 2018).  Thus, while Plaintiff can point to specific expenses that he incurred, the use of the federal IRS reimbursement rate may also be used to determine the amount of reimbursement due under Cal. Lab. Code § 2802.  See Gattuso v. Harte-Hanks Shoppers, Inc., 42 Cal.4th 554, 569 (2007).

Another court in this District has also made clear that, in the context of an app-based food delivery service, plaintiffs need not allege specific instances where expenses were incurred. See Tan v. GrubHub, Inc., 171 F.Supp.3d 998, 1006-07 (N.D. Cal. 2016).  Instead, plaintiffs need only allege that vehicle and phone related expenses were required to deliver food and run the Application.  See id.; see also Colopy v. Uber Techs., Inc., 2019 WL 6841218, *6 (N.D. Cal. Dec. 16, 2019).

30.     Plaintiff Hassell also had to switch his cellular data plan from an approximately $29 per month 8 GB plan from Tello Mobile to an approximately $39 per month unlimited data plan from the same mobile carrier in order to have enough data to run the Uber Eats App – which is the only way that Uber Eats sends him delivery assignments.  He would not have purchased an unlimited data plan if he did not work for Uber Eats.

31.     Uber Eats has not reimbursed Plaintiff Hassell (or any Uber Eats drivers) for the cost of fuel, tires, his cellular data plan, or any other expense that he has incurred in order to carry out his work as a food delivery driver.

32.     Plaintiff Hassell, like other drivers, is subject to Uber Eats' control during all hours worked: the time spent driving to a restaurant to pick up food, the time spent driving to a customer to deliver food, and the time spent online on the App between deliveries, while waiting for the next delivery.

33.     Plaintiff Hassell remains logged into the App between deliveries because it is the only way for him to be able to receive a new delivery assignment from Uber Eats.  He does this for Uber Eats' primary benefit because, unless Plaintiff and other drivers remain logged into the App between deliveries, Uber Eats would not have anyone to send delivery assignments to and, thus, there would be no one to bring Uber Eats' customers their food.  Drivers, including Plaintiff, are not able to freely engage in personal errands or activities while logged into the App between deliveries because Uber Eats requires that drivers either accept or reject delivery assignments that Uber Eats populates on their App within several seconds.  If drivers, including Plaintiff, do not respond to these delivery assignment requests, their "acceptance rate" will decline, which may ultimately lead to disciplinary measures like suspension or termination.  See Frlekin v. Apple, Inc., 8 Cal.5th 1038, 1056 (2020) (in considering whether an employee is subject to the employer's control so as to render time compensable "courts may and should consider additional relevant factors – including, but not limited to, the location of the activity, the

8
FIRST AMENDED COMPLAINT

degree of the employer's control, whether the activity primarily benefits the employer or employee, and whether the activity is enforced through disciplinary measures").

34.     Plaintiff Hassell does not perform personal errands or activities while he is waiting between orders so that he is available to respond to Uber Eats' delivery assignments and avoid a low acceptance rate.

35.     Uber Eats has violated Cal. Lab. Code §§ 1194 and 1197 by failing to assure that delivery drivers, including Plaintiff, make the applicable minimum wage for all hours worked, particularly after accounting for their expenses and other deductions taken from their pay.  The hours they work are hours driving to a restaurant to pick up food, driving to the customer to deliver food, and driving between deliveries while awaiting their next delivery assignment.

36.     For example, the week of May 6, 2020 to May 10, 2020, Plaintiff Hassell only earned $ 9.90 per hour when accounting for all of his time spent on the Uber Eats Application (including driving to the restaurant, dropping off the delivery, and wait time between deliveries) and after deducting expenses for mileage driven picking up and delivering food items and between deliveries (calculated at the IRS standard reimbursement rate).

37.     Similarly, for the pay period of July 27, 2020 through August 2, 2020, Plaintiff Hassell only earned $10.78 per hour when accounting for all of his time spent on the Uber Eats App (including driving to the restaurant, dropping off the delivery, and wait time between deliveries) even before deducting expenses for mileage driven picking up and delivering food items and between deliveries (calculated at the IRS standard reimbursement rate).  After deducting a total of $68.12 to account for the 75.4 miles (based on the IRS standard reimbursement rate of 57.5 cents per mile in 2020) that he drove picking up and delivering food items from his weekly earnings, his hourly rate for the pay period was $6.59 per hour.  Further, if only considering the time Plaintiff Hassell spent actively engaged in deliveries (driving to pick up and deliver food) for the same July 27, 2020 through August 2, 2020 time period, Plaintiff's

hourly rate was $11.02 per hour before deductions for mileage and $6.74 per hour after deducting expenses based on the IRS mileage rate.  Thus, Plaintiff received less than minimum wage for that week (and likely other weeks), regardless of whether or not the time spent between deliveries is taken into account and regardless of whether or not the expenses he incurred are taken into account.

38.     Uber Eats has violated Cal. Lab. Code §§ 1194, 1198, 510 and 554 by failing to pay its delivery drivers like Plaintiff the appropriate overtime premium for all overtime hours worked beyond forty per or eight per day.

39.     For example, Plaintiff Hassell has worked more than eight hours per day and more than forty per week at various times since he began delivering for Uber Eats and was never paid the appropriate premium for all hours worked beyond eight per day or forty per week.  For example, for the week of February 3, 2020 to February 9, 2020, Plaintiff Hassell worked forty-four (44) hours and two minutes. [4]  However, he did not receive time-and-a-half his regular rate of pay for the time he spent driving beyond forty hours that week.  The hours that Plaintiff worked were hours spent driving to pick up deliveries at the restaurant, driving to drop off deliveries to customers at their homes and businesses, and time spent between deliveries while awaiting the next delivery assignment.

40.     Similarly, Plaintiff Hassell worked more than eight (8) hours in a day on multiple occasions, including on the dates listed below, but was never paid the appropriate premium for all hours worked beyond eight per day.

_____

[4]     The original Complaint (Dkt. 1) in this action mistakenly stated that Plaintiff worked forty-four (44) hours for the week of February 3, 2020 to February 10, 2020.  Plaintiff Hassell did not perform any deliveries on February 10, 2020.

| Date | Total Hours Worked (including time between deliveries) | Hours Spent Driving to Pick Up Deliveries & Driving to Drop off Deliveries Only |
|------|---------------------------------------------------------|----------------------------------------------------------------------------------|
| March 1, 2020 | 8 hours and 43 minutes | 8 hours and 15 minutes |
| September 27, 2020 | 9 hours and 10 minutes | 9 hours and 1 minute |
| November 1, 2020 | 10 hours and 14 minutes | 9 hours and 58 minutes |

41.     Uber Eats has violated Cal. Lab. Code § 226(a) by failing to provide proper itemized wage statements to delivery drivers, including Plaintiff, that include all of the requisite information required by California law, namely hours worked and hourly wages.

42.     Plaintiff Hassell has only been able to access his pay statements by logging into the Uber Eats App.  His pay statements include a summary of his earnings, trip balances, any promotional deals that Uber Eats applied, and a list of all deliveries made during the relevant statement period with the date and time the order was accepted, the trip ID, and the earnings for the delivery.  Any information about Plaintiff's total hours worked (as defined in ¶ 32) is absent from his pay statements.  Plaintiff is not aware of any other place on the App that he can access his total hours worked during a single pay period.  Similarly, his pay statement has not included the total amount of time that he spent on a delivery driving to a restaurant to pick up an order and then driving to drop it off at the customer's home or business.[5]   Additionally, Plaintiff's pay statement also has not included hourly wages.  Instead, the pay statement only lists the earnings for each individual delivery.

---

[5]     The only way that Plaintiff Hassell could access this information is by clicking on a hyperlink for each individual delivery listed on his pay statement and then be redirected to a separate page with start and end times for that specific delivery, calculate the total time spent on the delivery, and then add all delivery times together to reach a final sum for the statement period.  This process by which Plaintiff could theoretically access this information is more burdensome than California law requires; under § 226(a), employers are required to provide this information on a paper pay statement and cannot force employees to undergo this burdensome process to access their wage information.

43.     Uber Eats has violated Cal. Lab. Code § 246 by not providing paid sick days to its delivery drivers, including Kent Hassell as required by California law.  This provision requires employers to allow employees to accrue sick days at the rate of not less than one hour for every thirty hours worked, which they can use after working for the employer for 30 days within a year from the start of their employment and allows employees to use up to 24 hours of sick leave annually.

44.     Plaintiff Hassell performed deliveries for Uber Eats approximately 215 days between January 2020 and December 17, 2020, when Proposition 22 went into effect.  He worked a total of 1,096.98 hours (which included 995.04 hours spent picking up and delivering food and 103.94 hours between deliveries waiting for new assignments) during this time period. Thus, Plaintiff Hassell should have accrued 24 hours of sick leave.  Plaintiff Hassell has not accrued paid sick days since starting to work for Uber Eats in January 2020.

45.     Despite being sick several days in 2020, Plaintiff Hassell was aware that Uber classified him as an independent contractor and did not provide paid sick leave pursuant to California law, so it would have been futile for him to request it from Uber Eats.

46.     On April 30, 2018, the California Supreme Court issued its decision in Dynamex, which made clear that Uber Eats delivery drivers should have been classified as employees rather than independent contractors under California law for purposes of wage-and-hour statutes. Under the "ABC" test adopted in Dynamex, in order to justify classifying the delivery drivers as independent contractors, Uber Eats would have had to prove that its delivery drivers perform services outside its usual course of business, which it could not do.  Notwithstanding this decision, Uber Eats continued to misclassify its drivers as independent contractors.

47.     Furthermore, the California legislature took steps to clarify and codify the "ABC" test set forth in the Dynamex decision by passing Assembly Bill 5, which was passed into law by the California legislature and went into effect on January 1, 2020.  The legislature had clearly

FIRST AMENDED COMPLAINT

intended for Uber to be covered by this statute; indeed, the author of the statute, Assemblywoman Lorena Gonzalez, had made clear that Uber (and similar "gig economy" companies) would not be exempted from the law.  Although Uber specifically lobbied to obtain a "carve-out" exemption from the law at the time it was enacted, it did not receive a carve-out from the legislature.  Instead, after its enactment, in 2020, Uber was one of several "gig economy" companies that invested nearly $200 million to fund a ballot initiative, Proposition 22 (which ultimately passed), seeking a carve-out for app-based "gig economy" companies from A.B. 5.  Uber's actions in opposing the law – and its expressed concern that the law would have a major impact on its business – were acknowledgments that A.B. 5 required it to classify its drivers as employees and provide employees with the protection of the California Labor Code.

48.     Uber Eats violated Cal. Lab. Code § 226.8 by willfully misclassifying drivers, including Plaintiff Hassell, as independent contractors, even after the issuance of the Dynamex decision by the California Supreme Court and the passage of A.B. 5, despite the fact that it held itself out to the public as a food delivery service and Plaintiff Hassell performed food delivery services within Uber Eats' usual course of business.  It was widely discussed throughout California, after the issuance of Dynamex and the passage of A.B. 5, that gig economy companies such as Uber were violating the law by continuing to classify their drivers as independent contractors.  See, e.g., Rogers v. Lyft, Inc., Case No. 20-cv-01938-VC (Transcript re Hearing on Emergency Motion for Preliminary Injunction) at 28-29 (explaining that AB5 clearly applies, and was intended to apply to, gig economy companies like Lyft); John Myers, *Uber, Lyft, DoorDash launch a $90-million fight against California Labor Law*, L.A. Times, Oct. 29, 2019, accessible at: https://www.latimes.com/california/story/2019-10-29/uber-lyft-doordash-fight-california-labor-law-ab5; Alexia Fernandez Campbell, *Gig Workers' Win in California Is a Victory for Workers Everywhere*, Vox (Sept. 11, 2019), accessible at: https://www.vox.com/2019/9/11/20851034/california-ab-5-workers-labor-unions.

FIRST AMENDED COMPLAINT

## V.  **CLASS ALLEGATIONS**

49.    Plaintiff Kent Hassell brings this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all Uber Eats drivers who have worked in California.

50.    The class representative and other class members have uniformly been misclassified as independent contractors.

51.    The members of the class are so numerous that joinder of all class members is impracticable.

52.    Common questions of law and fact regarding Uber Eats' conduct exist as to all members of the class and predominate over any questions affecting solely any individual members of the class.  Among the questions of law and fact common to the class are:

a.   Whether the work performed by class members – providing food delivery service to customers – is within Uber Eats' usual course of business, and whether such service is fully integrated into Uber Eats' business;

b.   Whether class members have been required to work under Uber Eats' direction and control;

c.   Whether class members have been engaged in an independently established business or occupation while they are delivering food to Uber Eats' customers;

d.   Whether class members have been required to bear the expenses of their employment, such as expenses for their vehicle, gas, and other expenses;

e.   Whether class members have suffered other violations of the California Labor Code and Wage Orders, as described herein.

53.    The class representative is a member of the class who suffered damages as a result of Defendant's conduct and actions alleged herein.

54.     The named plaintiff's claims are typical of the claims of the class, and the named plaintiff has the same interests as other members of the class.

55.     The named plaintiff will fairly and adequately represent and protect the interests of the class.  The named plaintiff has retained able counsel experienced in class action litigation. The interests of the name plaintiff is coincident with, and not antagonistic to, the interests of the other class members.

56.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

**57.**     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical.   Also, since the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation makes it practically impossible for the members of the class individually to redress the wrongs done to them.  The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation.  There will be no difficulty in the management of this action as a class action.

## COUNT I
### Expense Reimbursement
### Violation of Cal. Lab. Code § 2802; Wage Order 9-2001

58.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.  Uber Eats' conduct, as set forth above, in misclassifying its delivery drivers as independent contractors, and failing to reimburse them for expenses they paid that should have been borne by their employer, including but not limited to, gas, insurance, car maintenance, and phone and data charges, constitutes a violation of California Labor Code Sections 2802, 2750.3(a) and Wage Order 9-2001.

59.    This claim is brought on behalf of a class of similarly situated individuals who have worked as delivery drivers for Uber Eats in the State of California.

### COUNT II
### Minimum Wage
**Violation of Cal. Lab. Code §§ 1197, 1194, 1182.12, 1194.2, 1197.1, 1199;**
**Wage Order 9-2001**

60.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.  Uber Eats' conduct, as set forth above, in failing to ensure its delivery drivers receive minimum wage for all hours worked as required by California law, has violated Cal. Lab. Code §§ 1197, 1194, 1182.12, 1197.1, 1199, 2750.3, and Wage Order 9-2001.

61.    This claim is brought on behalf of a class of similarly situated individuals who have worked as delivery drivers for Uber Eats in the State of California.

### COUNT III
### Overtime
**Violation of Cal. Lab. Code §§ 1194, 1198, 510, and 554; Wage Order 9-2001**

62.    Plaintiff Hassell realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.  Defendant's conduct, as set forth above, in failing to pay its employees the appropriate overtime premium for overtime hours worked as required by California law, has violated Cal. Lab. Code §§ 1194, 1198, 510, 554, 2750.3, and Wage Order 9-2001.

63.    This claim is brought on behalf of a class of similarly situated individuals who have worked as delivery drivers for Uber Eats in the State of California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT IV
### Failure to Provide Accurate Itemized Pay Statements
### Violation of Cal. Lab. Code § 226(a), Wage Order 9-2001

64.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.  Uber Eats' conduct, as set forth above, in failing to provide itemized wage statements, as required by California state law, violates Cal. Lab. Code §§ 226(a), 2750.3 and Wage Order 9-2001.

65.     This claim is brought on behalf of a class of similarly situated individuals who have worked as delivery drivers for Uber Eats in the State of California.

## COUNT V
### Unfair Business Practices
### Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

66.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.  Defendant's conduct, as set forth above, in continuing to classify delivery drivers as independent contractors even after the California Supreme Court's decision in Dynamex Operations W., Inc. v. Superior Court (2018) 4 Cal.5th, 903, 416 P.3d 1, reh'g denied (June 20, 2018), the California Legislature's passage of A.B. 5, and the amended Cal. Lab. Code § 2750.3, which set forth the "ABC" test to define "employee" for purposes of the California Labor Code, all of which made clear that Uber Eats drivers were employees under California law, has violated Cal. Lab. Code § 226.8.

67.     Uber Eats' willful misclassification and other conduct, as set forth above, has violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL").  Uber Eats' conduct constitutes unlawful business acts or practices, in that Uber Eats has violated California Labor Code §§ 2802, 1194, 1198, 510, 554, 1197, 1194, 1182.12, 1194.2, 1197.1, 226.8, 226(a), and 246.

68.     As a result of Uber Eats' unlawful conduct, Plaintiff and class members have suffered injury in fact and lost money and property, including, but not limited to, business expenses that drivers were required to pay and wages that drivers were due.  Pursuant to California Business and Professions Code § 17203, Plaintiff and class members seek to recover restitution for Uber Eats' unlawful conduct.  Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff and class members who worked for Uber Eats are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

69.     This claim is brought on behalf of a class of similarly situated individuals who have worked as delivery drivers for Uber Eats in the State of California.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

a.   Certify a class action under Count I through V and appoint Plaintiff Kent Hassell, and his counsel, to represent a class of Uber Eats drivers who have worked in the State of California;

b.   Award compensatory damages including all expenses and wages owed, in an amount according to proof;

c.   Award pre- and post-judgment interest;

d.   Award reasonable attorneys' fees, costs, and expenses;

e.   Any other relief to which Plaintiff and the class may be entitled.

FIRST AMENDED COMPLAINT

Respectfully submitted,

KENT HASSELL, on behalf of himself and all others similarly situated,

By his attorneys,

*/s/ Shannon Liss-Riordan*

Shannon Liss-Riordan, SBN 310719
Anne Kramer, SBN 315131
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Dated:      January 4, 2021      Email:  sliss@llrlaw.com, akramer@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on January 4, 2021, on all counsel of record.

By: */s/ Shannon Liss-Riordan*
Shannon Liss-Riordan

19
FIRST AMENDED COMPLAINT