1  ANDREW M. SPURCHISE, Bar No. 245998
   aspurchise@littler.com
2  LITTLER MENDELSON, P.C.
   900 Third Avenue
3  New York, NY  10022.3298
   Telephone:    212.583.9600
4  Facsimile:    212.832.2719

5  SOPHIA BEHNIA, Bar No. 289318
   sbehnia@littler.com
6  BRIDGET O'HARA, Bar No. 313945
   bohara@littler.com
7  LITTLER MENDELSON, P.C.
   333 Bush Street, 34th Floor
8  San Francisco, CA 94104
   Telephone:    415.433.1940
9  Facsimile:    415.399.8490

10 Attorneys for Defendant
   UBER TECHNOLOGIES, INC.

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                         OAKLAND DIVISION

15 KENT HASSELL, on his own behalf and       Case No. 4:20-cv-04062-PJH
   on behalf of all others similarly situated,
16                                            **DECLARATION OF BRAD ROSENTHAL**
                 Plaintiff,                   **IN SUPPORT OF DEFENDANT'S**
17                                            **MOTION TO DISMISS AND STRIKE**
   v.                                         **PLAINTIFF'S CLASS ALLEGATIONS**
18                                            **FROM FIRST AMENDED COMPLAINT**
   UBER TECHNOLOGIES, INC., d/b/a
19 UBER EATS,                                 Date:     March 11, 2021
                                              Time:     1:30 p.m.
20               Defendants.                  Ctrm.:    3, 3rd Floor

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104
415.433.1940

BRAD ROSENTHAL DECLARATION ISO DEFT'S
MOTION TO DISMISS FAC AND STRIKE CLASS
ALLEGATIONS

CASE NO. 4:20-CV-04062-PJH

1    I, Brad Rosenthal, hereby declare as follows:

2    1.    I am over the age of 18 and I submit this declaration in support of Defendant Uber

3  Technologies, Inc.'s ("Uber" or "the Company") Motion to Dismiss and Motion to Strike Plaintiff's

4  Class Action Allegations from the First Amended Complaint. All of the information set forth herein

5  is based on my personal and firsthand knowledge and if called and sworn as a witness, I could and

6  would competently testify thereto.

7    2.    I am currently employed as Director of Strategic Operational Initiatives at Uber, in

8  which I use my previous operations and insurance team experience to create and implement new

9  company initiatives. Prior to my current role, I was employed by Uber from January 2014 through

10  October 2018. I was first employed as the Operations and Logistics Manager in Los Angeles from

11  January 2014 through mid-2014, and the Senior Operations and Logistics Manager in Los Angeles

12  from mid-2014 through December 2014. In December 2014, I moved to San Francisco to help work

13  in the Company's insurance team. In May 2017, I became Head of International Vehicle Solutions.

14  Then, starting in November 2017, I was employed as Head of Business Development for UberHealth

15  and I remained in that role until I left the company in October 2018. I returned to Uber in my current

16  role in November 2019.

17    3.    As a result of my positions with Uber, I have knowledge of Uber's operations and

18  business model, including its relationship with its subsidiaries providing services related to Uber's

19  operations. I am also familiar with Uber's record-keeping procedures and requirements.

20    4.    Portier, LLC is a wholly-owned subsidiary of Uber that enters into a Platform Access

21  Agreement with delivery people who would like to use the Uber Eats application. The Uber Eats

22  application (the "Uber Eats App") offers the Uber Eats marketplace, which connects individuals

23  seeking food delivery services ("customers") with restaurants offering food and individuals who can

24  provide delivery of the food ("delivery people"). I have access to Uber's business records regarding

25  delivery people, the agreements they have with Portier, LLC, and the deliveries they made using the

26  Uber Eats application, and I have accessed those records in the ordinary course of business.

27    5.    Each delivery person interested in using the Uber Eats application must first enter into

28  an agreement with Portier governing the person's use of the Uber Eats App and marketplace.

LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104
415.433.1940

BRAD ROSENTHAL DECLARATION ISO
DEFT'S MOTION TO DISMISS FAC AND
STRIKE CLASS ALLEGATIONS

1.

CASE NO. 4:20-CV-04062-PJH

DocuSign Envelope ID: C5A852F9-9F92-48AB-B926-8EEBA0EFE355

According to Uber's business records, Plaintiff Kent Hassell first accepted the Platform Access Agreement on January 20, 2020. The Platform Access Agreement contains an Arbitration Agreement and class waiver, and sets forth a procedure for opting-out of arbitration. Uber's records further show that Hassell exercised his right to opt out of the Arbitration Agreement on February 3, 2020, by sending his opt-out notice to optout@uber.com. I have reviewed and am familiar with the Uber business records referenced in this paragraph. A true and correct copy of the Platform Access Agreement as well as Hassell's opt out notice is attached hereto as Exhibit A.

6.    Uber has issued different versions of the Platform Access Agreement to delivery people over the years, but each version has contained an arbitration agreement similar to the one in Exhibit A.

7.    Based on my review of Uber's business records, over 400,000 delivery people completed at least one delivery in California on or after June 18, 2016. The vast majority of those individuals have agreed to arbitrate their claims and disputes with Uber on an individual basis.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this _____ 1 _____ day of February 2021.

brad rosenthal
_____
BRAD ROSENTHAL

4823-1972-1945.3 073208.2022

LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104
415.433.1940

# Exhibit A

*Platform Access Agreement*

*Updated as of January 6, 2020*

This Platform Access Agreement (this "*PAA*") is by and among you and your company/business ("*you*") and Portier, LLC , a subsidiary of Uber Technologies, Inc. ("*Uber*").  This PAA governs your access to our Platform (defined below) which facilitates your provision of delivery services to (1) account holders seeking to access certain types of delivery services ("*Delivery Recipients*") for themselves and/or their guests and (2) merchants providing the goods for delivery services ("*Merchants*").  For the sake of clarity and depending on the context, references to "*we*," "*our*" and "*us*" may also refer to Uber.

Access to our technology platform includes access to our technology application (the "*Driver App*") that, amongst other things, facilitates delivery transactions between you and Delivery Recipients; as well as websites and all other associated services, including payment and support services, provided by Uber, its affiliates or third parties (collectively, our "*Platform*").

Your access to our Platform is also governed by the applicable terms found on our website, including without limitation, the Community Guidelines, Referral Policies, other applicable Uber standards and policies (including, without limitation, Uber's safety standards and accessibility policies) and, except as provided in Section 12.9 below, any other agreements you have with us (including those related to how you choose to interact with our Platform, the services you choose to provide and where you chose to provide them)  (collectively with this PAA, this "*Agreement*"), which are incorporated by reference into this Agreement.  By accepting this Agreement, you confirm that you have read, understand and accept the provisions of this Agreement and intend to be bound by this Agreement.  This Agreement is effective as of the date and time you accept it.

1. **Relationship with Uber**
   1.1.     **Contracting Parties.**  The relationship between the parties is solely as independent business enterprises, each of whom operates a separate and distinct business enterprise that provides a service outside the usual course of business of the other.  This is not an employment agreement and you are not an employee.  You confirm the existence and nature of that contractual relationship each time you access our Platform.  We are not hiring or engaging you to provide any service; you are engaging us to provide you access to our Platform.  Nothing in this Agreement creates, will create, or is intended to create, any employment, partnership, joint venture, franchise or sales representative relationship between you and us.  You have no authority to make or accept any offers or representations on our behalf.

       **1.2.**      **Your Choice to Provide Delivery Services to Delivery Recipients.**  We do not, and have no right to, direct or control you.  Subject to Platform availability, you decide when, where and whether (a) you want to offer delivery services facilitated by our Platform and (b) you want to accept, decline, ignore or cancel a Delivery (defined below) request; provided, in each case, that you agree not to discriminate against any potential Delivery Recipient or Merchant in violation of the Requirements (defined below).  Subject to your compliance with this Agreement, you are not required to accept any minimum number of Delivery requests in order to access our Platform and it is entirely your choice whether to provide delivery services to Delivery Recipients directly, using our Platform, or using any other method to connect with Delivery Recipients, including, but not limited to other platforms and applications in addition to, or instead of, ours.  You understand, however, that the experiences Delivery Recipients and Merchants have with your Deliveries, as determined by Delivery Recipient and Merchant input, may affect your ability to access our Platform or provide Deliveries.

      **2.**      **Our Platform**

       **2.1.**      **General**.  While using our Driver App, you may receive lead generation and other technology-based services that enable those operating independent business enterprises like you to provide delivery services to Delivery Recipients ("*Deliveries*").  Subject to the terms and conditions of this Agreement, Uber hereby grants you a non-exclusive, non-transferable, non-sublicensable, non-assignable license, during the term of this Agreement, to use our Platform (including the Driver App) solely for the purpose of providing Deliveries and accessing services associated with providing Deliveries.

       **2.2.**      **Compliance.**  You are responsible for identifying, understanding, and complying with (i) all laws (including, but not limited to, the Americans with Disabilities Act and applicable laws governing your collection, use, disclosure, security, processing and transfer of data), rules and regulations that apply to your provision of Deliveries (including whether you are permitted to provide delivery services at all) in the jurisdiction(s) in which you operate (your "*Region*") and (ii) this Agreement (collectively, the "Requirements").  Subject to applicable law, you are responsible for identifying and obtaining any required license (including driver's license), permit, or registration required to provide Deliveries.  Notwithstanding anything to the contrary in this Agreement, for the avoidance of doubt, your ability to access and use our Platform is at all times subject to your compliance with the Requirements.  You agree not to access or attempt to access our Platform if you are not in compliance with the Requirements.

       **2.3.**      **Your Provision of Deliveries.**  You represent, warrant and covenant that (a) you have all the necessary expertise and experience to provide Deliveries in compliance with the Requirements and standards applicable to the delivery industry, (b) your access and use of our Platform, and provision of delivery service, in your Region is permitted by the Requirements

(including any age requirements) and (c) all such access and use of our Platform will be in compliance with the Requirements.  You are responsible for, and bear all costs of, providing all equipment, tools and other materials that you deem necessary or advisable and are solely responsible for any obligations or liabilities arising from the Deliveries you provide.

2.4.        **Accessing our Platform.**

(a)        To provide Deliveries you must create and register an account.  All information you provide to us must be accurate, current and complete and you will maintain the accuracy and completeness of such information during the term of this Agreement.  Unless otherwise permitted by us in writing, you agree to only possess one account for providing Deliveries.  You are responsible for all activity conducted on your account.  For account security, as well as Delivery Recipient and Merchant safety purposes, you agree not to share or allow anyone to use your login credentials or other personal information used in connection with your account, including but not limited to photos of yourself, to access our Platform.  If you think anyone has obtained improper access to your account, login credentials or personal information, you are required to notify us and to change your password immediately so that we may take appropriate steps to secure your account.  You agree that we are not responsible for any losses arising from your sharing of account credentials with a third party, including without limitation phishing.  You can visit help.uber.com for more information about securing your account.

(b)        You represent, warrant and covenant that you have all required authority to accept and be bound by this Agreement.  If you are accepting this Agreement on behalf of your company, entity, or organization, you represent and warrant that you are an authorized representative of that company, entity, or organization with the authority to bind such party to this Agreement.

2.5.        **Background Checks and Licensing, Vehicle Standards**.

(a)        During your account creation and registration, we will collect, and may verify, certain information about you and the vehicle(s) you use to provide Deliveries ("*your vehicle*").

(b)        You will also be required to pass various background, driving record and other checks both prior to the first time you access our Platform and from time to time thereafter during the term of this Agreement; these checks may be facilitated by third parties.  You hereby authorize and instruct us to provide copies of such checks to insurance companies, relevant regulators and/or other governmental authorities as needed for safety or other reasons, as described in our Privacy Notice.

(c)      You agree that your vehicle will be properly  registered, licensed and suitable to provide Deliveries in your Region.  You represent that at all times during the provision of any Deliveries your vehicle will be in your lawful possession with valid authority to use your vehicle to provide Deliveries in your Region.  You agree that your vehicle will be in safe operating condition, consistent with safety and maintenance standards for a vehicle of its type in the delivery industry.  You agree to monitor for and repair any parts that are recalled by your vehicle's manufacturer (as well as anything else the Requirements applicable to your particular Region may require).

**2.6.**      **Accepting Delivery Requests**.

(a)      Delivery requests may appear in the Driver App and you may attempt to accept, decline or ignore them.  Accepting a Delivery request creates a direct business relationship between you and your Delivery Recipient in accordance with the terms of the delivery service the Delivery Recipient and/or Merchant has requested through our Platform.  The mechanism for accepting or declining Delivery requests may vary depending on your location and the type of Delivery request you accept.  You acknowledge upon acceptance of a Delivery request, you may incur Uber fees as described in an applicable fare addendum to this PAA.

(b)      You will choose the most effective, efficient, and safe manner to reach the  destinations associated with a Delivery.  Any navigational directions offered in the Driver App are offered for your convenience only; you have no obligation to follow such navigational directions.

(c)      You may receive Delivery Recipient and Merchant information, including approximate pickup location, and you agree that your Delivery Recipient and Merchant may also be given identifying information about you, including your first name, photo, location, vehicle information, and certain other information you have voluntarily provided through the Driver App (collectively, "*User Information*").  Without a Delivery Recipient's consent, you agree to not contact any Delivery Recipient or otherwise use any of the Delivery Recipient's User Information except solely in connection with the provision of Deliveries to that Delivery Recipient.  You agree to treat all User Information as Confidential Information (defined below) received by you under this Agreement.  You acknowledge that your violation of your confidentiality obligations may also violate certain laws and could result in civil or criminal penalties.

**2.7.**      **Use of Uber Branded Materials.**

(a)      Except to the extent necessary to comply with applicable law, you are not required to use, wear or display Uber's name or logo on your vehicle or clothing, or to

use signaling lights, stickers, decals, or other such materials displaying Uber's name or logo (collectively "*Uber Branded Materials*").

        (b)     Your authorized display of Uber Branded Materials may signify to Delivery Recipients and Merchants that your delivery services are facilitated by our Platform. Uber grants you a limited license to use, wear, or display Uber Branded Materials provided directly to you by Uber ("*Authorized Uber Branded Materials*") when providing Deliveries solely for the purpose of identifying yourself and your vehicle to Delivery Recipients and Merchants as someone selling delivery services facilitated by our Platform. You agree not to (i) use, wear, or display Uber-Branded Materials that are not Authorized Uber Branded Materials(ii) purchase, accept, offer to sell, sell or otherwise transfer Uber Branded Materials that are not Authorized Uber Branded Materials or (iii) offer to sell or sell, or otherwise transfer Authorized Uber Branded Materials, without our prior written permission.

        (c)     The parties expressly agree that your access to, or use of, Uber Branded Materials, whether or not authorized, does not indicate an employment or other similar relationship between you and us. You further agree not to represent yourself as our employee, representative or agent for any purpose or otherwise misrepresent your relationship with us.

      **2.8.**     **Crashes, Criminal Offenses, and Other Compliance Obligations.** For the purpose of assisting us with our compliance and insurance obligations, you agree to notify us within 24 hours and provide us with all reasonable information relating to any incident (including any crash involving your vehicle) that occurs during your provision of a Delivery and you agree to cooperate with any investigation and attempted resolution of such incident. Additionally, you agree to notify us within 24 hours if you are arrested for, charged with, or convicted of a criminal offense for Platform eligibility consideration.

      **2.9.**     **Ratings**. The Delivery Recipient and Merchant may be asked to comment on your services, and you may be asked to comment on the Delivery Recipient and Merchant. These comments can include ratings and other feedback (collectively, "*Ratings*"), which we ask all parties to provide in good faith. Ratings are not confidential and you hereby authorize our use, distribution and display of your Ratings (and Ratings about you) as provided in our Privacy Notice, without attribution or further approval. We have no obligation to verify Ratings or their accuracy, and may remove them from our Platform in accordance with the standards in our Community Guidelines. You can find out more about Ratings and how they may affect your ability to access our Platform by visiting our website.

      **2.10.**     **Location Based Technology Services; Communication Consents.**

(a)     Your device geo-location information is required for the proper functioning of our Platform, and you agree to not take any action to manipulate or falsify your device geo-location.  You grant us the irrevocable right to obtain your geo-location information and to share your location with third parties, including your Delivery Recipients and Merchants, who will see the approximate location of your vehicle in the applicable Uber app before and during the Delivery.  We may not and will not use this information to attempt to supervise, direct, or control you or your provision of Deliveries.

(b)     You agree that we may contact you by email, telephone or text message (including by an automatic telephone dialing system) at any of the phone numbers provided by you, or on your behalf, in connection with your account.  You also understand that you may opt out of receiving text messages from us at any time, either by replying "STOP" or texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting us at help.uber.com.  Notwithstanding the foregoing, we may also contact you by any of the above means, including by SMS, in case of suspected fraud or unlawful activity by your or on your account.

3.   **Insurance**

   **3.1.**        **Deliveries Using Your Vehicle.**  If you provide Deliveries using a vehicle, the obligations in this Section 3.1 shall apply.

(a)     You will maintain automobile liability insurance on your vehicle that provides protection against bodily injury and property damage to third parties at coverage levels that satisfy the minimum requirements to operate a vehicle on public roads wherever you use your vehicle.  You must be listed as an insured or a driver on your automobile liability insurance.  You will provide us with a copy of the insurance policy, policy declarations, proof of insurance identification card and proof of premium payment for your policy, as well as copies of the same upon renewal.  You will notify us in writing immediately if the policy you have is cancelled.

(b)     You understand that while you are providing Deliveries your personal automobile insurance policy may not afford liability, comprehensive, collision, medical payments, personal injury protection, uninsured motorist, underinsured motorist, or other coverage for you.  If you have any questions or concerns about the scope or applicability of your own insurance coverage, it is your responsibility to resolve them with your insurer.

(c)     You will maintain workers' compensation insurance if it is required by applicable law.  If allowed by applicable law, you can insure yourself against industrial injuries by maintaining occupational accident insurance in place of workers' compensation insurance (and it is at your own risk if you decide not to).

(d)      We may, in our sole discretion, choose to maintain auto insurance related to your Deliveries, but we are not required to provide you with any specific coverage for loss to you or your vehicle, unless we specifically describe it in an addendum to this PAA.  We can change, reduce or cancel insurance that is maintained by us, if any, at any time without notice to you or authorization from you.

**3.2.      Other Deliveries.**  If you tell us that you will use a bicycle or other non-motor vehicle mode of transport for Deliveries, but then use an automobile or other motorized device that is considered a motor vehicle, we will not provide any form of insurance for you and you will be responsible for reimbursing us for any amounts that we are found liable for in respect to your use of such automobile or other motorized device.

**4.      Payments**

**4.1.      Instant Pay.**

(a)      **Eligibility for Instant Pay.**  You must have a valid and active debit card issued in your name to use Instant Pay.  Your ability to use Instant Pay is dependent upon your debit card's acceptance of fast funds; not all debit cards are eligible to accept fast funds, and the card's issuing bank may choose at any time to disable the acceptance of fast funds or enable restrictions.  Certain users may not be eligible for Instant Pay, including users that access our vehicle solutions programs and those who are subject to garnishments.  Your use of Instant Pay may be subject to additional restrictions and fees; more information may be found on our Instant Pay website.

(b)      **Availability of Instant Pay.**  We are not able to ensure that all payments are deposited instantly.  The speed at which you receive payments will depend on your bank and other factors.  If your bank rejects a payment, or it fails in our system, the entire amount available for cashout in your account will be routed to your regular bank account at vault.uber.com, and you will receive the payment typically 1-3 business days later.  Any Instant Pay funds not cashed out by 4AM (Local time) on Mondays, or the time we identify, which may be subject to change, will be routed to your regular bank account at vault.uber.com.  If you do not have access to Instant Pay, you will continue to receive payments as described in this addendum via direct deposit, provided we have your correct banking information.  We are not responsible for any fees from your bank in association with your use of Instant Pay.  We reserve the right to block access to Instant Pay at any time for any reason, including for improper use of our Platform, account investigation, deactivation, or further review of Deliveries completed.

(c)      **Third-Party Provider.**  The Instant Pay functionality is facilitated

by a third-party provider of payments services.  By using Instant Pay, you are subject to any additional terms and conditions for payment imposed by the third-party provider, which we recommend you review.

        **4.2.**        Payment terms, fare calculations and payment methods are described in a separate fare addendum, which shall form part of this Agreement.

        **5.**        **Term and Termination; Effect; Survival**

        **5.1.**        **Term**.  This Agreement is effective as of the date and time you accept it and will continue until terminated by you or us.

        **5.2.**        **Termination by You**.  You may terminate this Agreement (a) without cause at any time upon seven (7) days' prior written notice to Uber; and (b) immediately, without notice for Uber's violation or alleged violation of a material provision of this Agreement.  You can find out more about how to delete your account by navigating to help.uber.com.

        **5.3.**        **Deactivation**.  You consent to and we may temporarily deactivate your account without notice to investigate whether you have engaged in, or your account has been used in, activity that is deceptive, fraudulent, unsafe, illegal, harmful to our brand, business or reputation, or that violates this Agreement (including the policies incorporated herein by reference)(any of the foregoing, a "*Material Breach or Violation*").  You also consent to and we may terminate this Agreement or permanently deactivate your account without notice if we determine in our discretion that a Material Breach or Violation has occurred.

        **5.4.**        **Effect of Termination and Survival**.  Upon termination, each party will remain responsible for its respective liabilities or obligations that accrued before or as a result of such termination.  Once the Agreement is terminated you will no longer access our Platform to provide Deliveries.  You agree to use commercially reasonable efforts to return any Uber Branded Materials, but excluding promotional materials or purchased items, to an Uber Greenlight Hub or destroy them.  Sections 1, 2.7, 2.10(b), 4, 5.5, 6-9, 12 and 13 shall survive any termination or expiration of this Agreement.

        **6.**        **DISCLAIMERS**

        **6.1.**        WE PROVIDE OUR PLATFORM AND ANY ADDITIONAL PRODUCTS OR SERVICES "AS IS" AND "AS AVAILABLE," WITHOUT GUARANTEE OR WARRANTY OF ANY KIND, AND YOUR ACCESS TO OUR PLATFORM IS NOT GUARANTEED TO RESULT IN ANY DELIVERY REQUESTS.  WE DO NOT WARRANT THAT OUR PLATFORM WILL BE ACCURATE, COMPLETE, RELIABLE, CURRENT, SECURE, UNINTERRUPTED, ALWAYS AVAILABLE, OR ERROR- FREE, OR WILL

MEET YOUR REQUIREMENTS, THAT ANY DEFECTS WILL BE CORRECTED, THAT OUR TECHNOLOGY IS FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.  WE WILL NOT BE LIABLE FOR ANY SERVICE INTERRUPTIONS OR LOSSES RESULTING FROM SERVICE INTERRUPTIONS, INCLUDING BUT NOT LIMITED TO SYSTEM FAILURES OR OTHER INTERRUPTIONS THAT MAY AFFECT YOUR ACCESS TO OUR PLATFORM.

**6.2.**        WE PROVIDE LEAD GENERATION AND RELATED SERVICES ONLY, AND MAKE NO REPRESENTATIONS, WARRANTIES OR GUARANTEES AS TO THE ACTIONS OR INACTIONS OF THE DELIVERY RECIPIENTS WHO MAY REQUEST OR ACTUALLY RECEIVE DELIVERIES FROM YOU.  WE DO NOT SCREEN OR EVALUATE THESE DELIVERY RECIPIENTS. SOME JURISDICTIONS PROVIDE FOR CERTAIN WARRANTIES, SUCH AS THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY, AVAILABILITY, SAFETY, SECURITY, AND NON-INFRINGEMENT.  WE EXCLUDE ALL WARRANTIES TO THE EXTENT THOSE REGULATIONS ALLOW.

**6.3.**        IF A DISPUTE ARISES BETWEEN YOU AND YOUR DELIVERY RECIPIENTS OR ANY OTHER THIRD-PARTY, YOU RELEASE US FROM LOSSES OF EVERY KIND AND NATURE, KNOWN AND UNKNOWN, SUSPECTED AND UNSUSPECTED, DISCLOSED AND UNDISCLOSED, ARISING OUT OF OR IN ANY WAY CONNECTED WITH SUCH DISPUTES.

**6.4.**        WE MAY USE ALGORITHMS IN AN ATTEMPT TO FACILITATE RIDES AND IMPROVE THE: EXPERIENCE OF USERS AND THE SECURITY AND SAFETY OF OUR PLATFORM; ANY SUCH USE DOES NOT CONSTITUTE A GUARANTEE OR WARRANTY OF ANY KIND, EXPRESSED OR IMPLIED.

## 7.    Information

We may collect and disclose information from or about you when you create an account, interact with our Platform or provide Rides and as otherwise described in our <u>Privacy Notice</u>. Notwithstanding anything herein to the contrary (a) the collection, use, and disclosure of such information will be made in accordance with our <u>Privacy Notice</u> and (b) if you elect to provide or make available suggestions, comments, ideas, improvements, or other feedback or materials to us in connection with, or related to, us or our Platform, we will be free to use, disclose, reproduce, modify, license, transfer and otherwise distribute, and exploit any of the foregoing information or materials in any manner.

## 8.    Confidentiality

**8.1.**        **Confidential Information**.  Each party acknowledges and agrees that in the performance of this Agreement it may have access to or may be exposed to, directly or indirectly, confidential information of the other party or third parties ("*Confidential*

*Information*").  Confidential Information includes User Information and the volume of delivery services, marketing and business plans, business, financial, technical, operational and such other, non-public information of each party (whether disclosed in writing or verbally) that such party designates as being proprietary or confidential or of which the other party should reasonably know that it should be treated as confidential.  Confidential Information does not include any information that: (a) was in the receiving party's lawful possession prior to the disclosure, as clearly and convincingly corroborated by written records, and had not been obtained by the receiving party either directly or indirectly from the disclosing party; (b) is lawfully disclosed to the receiving party by a third party without actual, implied or intended restriction on disclosure through the chain of possession, or (c) is independently developed by the receiving party without the use of or access to the Confidential Information, as clearly and convincingly corroborated by written records.

8.2.        **Obligations**.  Each party acknowledges and agrees that: (a) all Confidential Information shall remain the exclusive property of the disclosing party; (b) it shall not use Confidential Information of the other party for any purpose except in furtherance of this Agreement; (c) it shall not disclose Confidential Information of the other party to any third-party, except to its employees, officers, contractors, agents and service providers ("*Permitted Persons*") as necessary to perform their obligations under this Agreement, provided Permitted Persons are bound in writing to obligations of confidentiality and non-use of Confidential Information no less protective than the terms hereof; and (d) it shall return or destroy all Confidential Information of the disclosing party, upon the termination of this Agreement or at the request of the other party;  subject to applicable law and our internal record-keeping requirements.

8.3.        **Remedies.**  The unauthorized use or disclosure of any Confidential Information would cause irreparable harm and significant damages, the degree of which may be difficult to ascertain.  Accordingly, the parties have the right to obtain immediate equitable relief to enjoin any unauthorized use or disclosure of Confidential Information disclosed by the other party, in addition to any other rights or remedies described in Section 13, applicable law or otherwise.

9.    **Intellectual Property**

We reserve all rights not expressly granted in this Agreement.  The Driver App, our Platform, and all data gathered through our Platform, including all intellectual property rights therein (the "*Platform IP*"), are and remain our property and/or that of our licensors, as applicable.  Neither this Agreement nor your use of Uber's or our  licensors' company names, logos, products or service names, trademarks, service marks, trade dress, other indicia of ownership, or copyrights ("*Uber Names, Marks, or Works*") or the Platform IP conveys or grants to you any rights in or

related to the Platform IP, or related intellectual property rights, including Uber's Names, Marks, or Works, except for the limited license granted above.  You shall not, and shall not allow any other party to: (a) license, sublicense, copy, modify, distribute, create, sell, resell, transfer, or lease any part of the Platform IP or Authorized Uber-Branded Materials; (b) reverse engineer or attempt to extract the source code of our software, except as allowed under law; (c) use, display, or manipulate any of Uber Names, Marks, or Works for any purpose other than to provide Deliveries; (d) create or register any (i) businesses, (ii) URLs, (iii) domain names, (iv) software application names or titles, or (v) social media handles or profiles that include Uber Names, Marks, or Works or any confusingly or substantially similar mark, name, title, or work; (e) use Uber Names, Marks, or Works as your social media profile picture or wallpaper; (f) purchase keywords (including, but not limited to Google AdWords) that contain any Uber Names, Marks, or Works; (g) apply to register, reference, use, copy, and/or claim ownership in Uber's Names, Marks, or Works, or in any confusingly or substantially similar name, mark, title, or work, in any manner for any purposes, alone or in combination with other letters, punctuation, words, symbols, designs, and/or any creative works, except as may be permitted in the limited license granted above; (h) cause or launch any programs or scripts for the purpose of scraping, indexing, surveying, or otherwise data mining any part of our Platform or data; or (i) aggregate our data with competitors'.

10.     **Third-Party Services**

From time to time we may permit third parties to offer their services to users of our Platform. Third-party services may be subject to additional terms (including pricing) that apply between you and the party(ies) providing such services.  If you choose to access the third-party services you understand that the providers of the third-party services are solely responsible for liabilities arising in connection with the access and use of such third-party services.  While we may allow users to access such services through our Platform and we may collect information about our users' use of such services, we may not investigate, monitor or check such third-party services for accuracy or completeness.

11.     **Termination of Prior Agreements**

11.1.     **Prior TSA.**  This Section 11 only applies if you were a party to an effective technology services agreement (a "*Prior Agreement*") with Uber immediately prior to your acceptance of this Agreement.  Except as provided in Sections 11.2 and 13 below, you and Uber hereby terminate your Prior Agreement (except as provided in the survival provision of such agreement) and the Deprecated Documents (defined below)(collectively, "*Prior Documents*"), effective as of your acceptance of this Agreement.  The parties, respectively, hereby waive any applicable notice requirements with respect to their termination of the Prior Documents.

11.2.     **Other Agreements.**  Notwithstanding the termination of your Prior

Documents, you hereby (a) ratify, assume and confirm your obligations under any supplements or addenda, except those that are no longer required by the Requirements or applicable to your provision of Delivery Services ("*Depreciated Documents*"), accepted in connection with your Prior Agreement that are not expressly superseded by this PAA or documents accepted in connection with the acceptance of this PAA, with such changes as may be required to effectuate the foregoing ("*Continuing Documents*") and (b) acknowledge and agree that as of your acceptance of this Agreement such Continuing Documents are incorporated by reference and form a part of this Agreement.  We hereby ratify, assume and confirm our obligations under such Continuing Documents.  For the avoidance of doubt, as applicable, the definition of Continuing Documents  this shall include any addenda related to the provision of combined services.

12.    **Miscellaneous**

12.1.        **Modification.**  You will only be bound by modifications or supplements to this PAA on your acceptance, but if you do not agree to them, you may not be allowed to access our Platform.  Such modifications or supplements may be provided to you only via electronic means.  From time to time we may modify information hyperlinked in this PAA (or the addresses where such information may be found) and such modifications shall be effective when posted.

12.2.        **Severability.**  Invalidity of any provision of this Agreement does not affect the rest of this Agreement.  The parties shall replace the invalid or non-binding provision with provision(s) that are valid and binding and that have, to the greatest extent possible, a similar effect as the invalid or non-binding provision, given the contents and purpose of this Agreement.

12.3.        **Assignment.**  We may freely assign or transfer this Agreement or any of our rights or obligations in them, in whole or in part, without your prior consent.  You agree not to assign this Agreement, in whole or in part, without our prior written consent, and any attempted assignment without such consent is void.

12.4.        **Conflicts.**  Except with respect to the Arbitration Provision, if there is a conflict between this PAA and any supplemental terms between you and us, those supplemental terms will prevail with respect to the specific conflict if explicitly provided therein, and is in addition to, and a part of, this Agreement.

12.5.        **Interpretation.**  In this Agreement, "*including*" and "*include*" mean "*including, but not limited to*."

12.6.        **Notice.**  Except as explicitly stated otherwise, any notices to us shall be given by certified mail, postage prepaid and return receipt requested to Uber Technologies Inc., 1455 Market Street, Fourth Floor San Francisco, CA 94103, Attn: Legal Department. All notices to you may be provided electronically including through our Platform or by other means.

12.7.        **Governing Law.**  Except as specifically provided in this PAA, this PAA is governed by the applicable law of the state where you reside (or where your entity is domiciled) when you accepted this PAA (the "*Governing Law*").  The Governing Law shall apply without reference to the choice-of-law principles that would result in the application of the laws of a different jurisdiction.

**12.8.** **Entire Agreement.** Except as specifically set forth in Section 12.4 or the Arbitration Provision, this Agreement, constitutes the entire agreement and understanding with respect to the subject matter expressly contemplated herein and therein, and supersedes all prior or contemporaneous agreements or undertakings on this subject matter.

**12.9.** **No Incorporation.** Notwithstanding anything herein to the contrary, no agreement, term or other provision relating to your indemnification obligations to us will be considered incorporated by reference, or otherwise a part of, this Agreement.

**12.10.** **Existing Documents.** Defined terms in documents accepted in connection with your acceptance of this Agreement that reference a Technology Services Agreement shall be deemed amended to reference analogous terms defined in this Agreement, including by replacing the term "Technology Services Agreement" with "Platform Access Agreement".

**12.11.** **Questions.** If you have questions about our Platform, you may contact us by logging on to drivers.uber.com and navigating to the "Contact Us" section.

**13.** **Arbitration Provision**

**IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW. YOU MAY CHOOSE TO OPT OUT OF THIS ARBITRATION PROVISION BY FOLLOWING THE BELOW INSTRUCTIONS. THERE ARE AND/OR MAY BE LAWSUITS ALLEGING CLASS, COLLECTIVE OR REPRESENTATIVE CLAIMS ON YOUR BEHALF AGAINST US. IF YOU DO NOT OPT OUT OF THIS ARBITRATION PROVISION AND THEREFORE AGREE TO ARBITRATION WITH US, YOU ARE AGREEING IN ADVANCE, EXCEPT AS OTHERWISE PROVIDED BELOW, THAT YOU WILL NOT PARTICIPATE IN AND, THEREFORE, WILL NOT SEEK OR BE ELIGIBLE TO RECOVER MONETARY OR OTHER RELIEF IN CONNECTION WITH, ANY SUCH CLASS, COLLECTIVE OR REPRESENTATIVE LAWSUIT. THIS ARBITRATION PROVISION, HOWEVER, WILL ALLOW YOU TO BRING INDIVIDUAL CLAIMS IN ARBITRATION ON YOUR OWN BEHALF.**

**13.1.** **How This Arbitration Provision Applies.**

(a)     This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce, and you agree that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the Federal Arbitration Act. If notwithstanding the foregoing, the Federal Arbitration Act does not apply to this Arbitration Provision, the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply.  Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with us or relationship with any of our agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates.

(b)     This Arbitration Provision applies to all claims whether brought by you or us, except as provided below.  This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial.  Except as provided below regarding the Class Action Waiver and Representative Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision.

(c)     Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes between you and us, or between you and any other entity or individual, arising out of or related to your application for and use of an account to use our Platform and Driver App as a driver, background checks, your privacy, your contractual relationship with us or the termination of that relationship (including post-relationship defamation or retaliation claims), the nature of your relationship with us (including, but not limited to, any claim that you are our employee), trade secrets, workplace safety and health, unfair competition, compensation, minimum wage, expense reimbursement, overtime, breaks and rest periods, retaliation, discrimination, or harassment and claims arising under the Telephone Consumer Protection Act, Fair Credit Reporting Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 8 U.S.C. § 1324b (unfair immigration related practices), Americans With Disabilities Act, Age Discrimination in Employment Act, Fair Labor Standards Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, federal, state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state, or local statutory, common law and legal claims (including without limitation, torts) arising out of or relating to your relationship with us or the termination of that relationship.

**13.2.**       **Limitations On How This Arbitration Provision Applies.**

(a)       Nothing in this Arbitration Provision prevents you from making a report to or filing a claim or charge with a government agency, including without limitation the Equal Employment Opportunity Commission, U.S. Department of Labor, U.S. Securities and Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs.  This Arbitration Provision also does not prevent federal administrative agencies from adjudicating claims and awarding remedies based on those claims, even if the claims would otherwise be covered by this Arbitration Provision.

(b)       Where you allege claims of sexual assault or sexual harassment, you may elect to bring those claims in a court of competent jurisdiction instead of arbitration. We agree  to honor your election of forum with respect to your individual sexual harassment or sexual assault claim but in so doing does not waive the enforceability of this Arbitration Provision as to any other provision (including but not limited to Section 13.4—Class Action Waiver, which will continue to apply in court and arbitration), controversy, claim or dispute.

(c)       To the extent an Act of Congress or applicable federal law not preempted by the Federal Arbitration Act provides that a particular claim or dispute may not be subject to pre-dispute arbitration, such claim or dispute is excluded from the coverage of this Arbitration Provision.  Likewise, if the Federal Arbitration Act does not apply to a claim or dispute, any claims or disputes that may not be subject to pre-dispute arbitration under applicable state arbitration law will be excluded from the coverage of this Arbitration Provision.

(d)       _Impact on Pending Litigation_: This Arbitration Provision shall not affect your standing with respect to any litigation against us brought by you or on your behalf that is pending in a state or federal court or arbitration as of the date of your receipt of this Arbitration Provision ("_pending litigation_").  Therefore:

● If you are or previously were a driver authorized to use our Platform and Driver App, and at the time of your receipt of this Agreement you were not bound by an existing arbitration agreement with us, you shall remain eligible to participate in any pending litigation to which you were a party or putative class, collective or representative action member regardless of whether you opt out of this Arbitration Provision.

● If, at the time of your receipt of this Agreement, you were bound by an existing arbitration agreement with us, that arbitration agreement will continue to apply to any pending litigation, even if you opt out of this Arbitration Provision.

● If, at the time of your receipt of this Agreement, you were not previously a driver authorized to use our Platform and Driver App, then this Arbitration Provision will apply to covered claims and any pending litigation unless you opt out of this Arbitration Provision as provided below.

**13.3.      Governing Rules, Starting The Arbitration, And Selecting The Arbitrator.**

(a)      The JAMS Comprehensive Arbitration Rules & Procedures ("*JAMS Rules*") will apply to arbitration under this Arbitration Provision; however, if there is a conflict between the JAMS Rules and this Arbitration Provision, this Arbitration Provision shall govern. The JAMS Rules are available by, for example, searching Google.com, to locate "JAMS Comprehensive Arbitration Rules" or by clicking here: https://www.jamsadr.com/rules-comprehensive-arbitration/.

(b)      Prior to commencing arbitration with JAMS, the party bringing the claim in arbitration must first demand arbitration in writing within the applicable statute of limitations period.  The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought and the amount in controversy.  Any demand for arbitration made to us shall be served upon Uber's registered agent for service of process (CT Corporation, 818 West Seventh Street, Suite 930, Los Angeles, California 90017).  Any demand for arbitration made to you shall be sent via electronic email to the email address associated with your driver account.

(c)      Before the arbitration demand is submitted to JAMS, the party bringing the claim shall first attempt to informally negotiate with the other party, in good faith, a resolution of the dispute, claim or controversy between the parties for a period of not less than 30 days but no more than 45 days ("*negotiation period*") unless extended by mutual agreement of the parties.  During the negotiation period, any otherwise applicable statute of limitations shall be tolled.  If the parties cannot reach an agreement to resolve the dispute, claim or controversy within the negotiation period, the party bringing the claim shall submit the arbitration demand to JAMS.

(d)      To commence arbitration, the party bringing the claim must: (1) submit the arbitration demand to JAMS, and (2) pay its, his or her portion of any initial arbitration filing fee (see Section 13.6, below).

(e)     During the negotiation period, the party bringing the claim shall also make a good faith effort to meet and confer with the other party regarding the selection of an Arbitrator.  If the parties reach agreement on an Arbitrator not affiliated with JAMS or to use procedures either not specified in the JAMS Rules or in lieu of the JAMS Rules, any such agreement shall be memorialized in writing before arbitration is commenced.

(f)     Delivering a written arbitration demand to the other party will not relieve the party bringing the claim of the obligation to commence arbitration as described above. It shall always be the obligation of the party bringing the claim to commence arbitration.

(g)     If, for any reason, the parties cannot agree to an Arbitrator or JAMS will not administer the arbitration, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator.  The location of the arbitration shall be no more than 45 miles from and in the same state where you last used our Platform and Driver App as a driver, unless each party to the arbitration agrees in writing otherwise.

(h)     All claims in arbitration are subject to the same statutes of limitation that would apply in court.  The Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

13.4.     **Class Action Waiver.  This Arbitration Provision affects your ability to participate in class or collective actions.**  Both Uber and you agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or for you to participate as a member in any such class or collective proceeding ("*Class Action Waiver*").  Notwithstanding any other provision of this Arbitration Provision or the JAMS Rules, disputes in court or arbitration regarding the validity, enforceability, conscionability or breach of the Class Action Waiver, or whether the Class Action Waiver is void or voidable, may be resolved only by the court and not by an arbitrator.  In any case in which (1) the dispute is filed as a class or collective action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class or collective action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

13.5.     **Representative Action Waiver.**

(a)     **This Arbitration Provision affects your ability to participate in representative actions.**  To the maximum extent provided by law, both Uber and you agree to bring any dispute in arbitration on an individual basis only, and not on a representative basis—including but not limited to as a private attorney general representative under the California Labor Code—on behalf of others.  There will be no right or authority for any dispute to be brought, heard or arbitrated as a representative action, or for you to participate as a member in any such representative proceeding ("*Representative Action Waiver*"). Notwithstanding any other provision of this Arbitration Provision or the JAMS Rules, disputes in court or arbitration regarding the validity, enforceability, conscionability or breach of the Representative Action Waiver, or whether the Representative Action Waiver is void or voidable, may be resolved only by the court and not by an arbitrator.  If any portion of this Representative Action Waiver is found to be unenforceable or unlawful for any reason (1) any representative claims subject to the unenforceable or unlawful portion(s) shall proceed in a civil court of competent jurisdiction; (2) the portion of the Representative Action Waiver that is enforceable shall be enforced in arbitration; (3) the unenforceable or unlawful provision shall be severed from this Agreement; and (4) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the Arbitration Provision or the arbitrability of any remaining claims asserted by you or us.

(b)     Disputes regarding the nature of your relationship with us (including, but not limited to, any claim that you are an employee of us), as well as any claim you bring on your own behalf as an aggrieved worker for recovery of underpaid wages or other individualized relief (as opposed to a representative claim for civil penalties) are arbitrable and must be brought in arbitration on an individual basis only as required by this Arbitration Provision.  You agree that any representative claim that is permitted to proceed in a civil court of competent jurisdiction must be stayed pending the arbitration of your dispute regarding the nature of your relationship with us and any claim you bring on your own behalf for individualized relief.

     **13.6.**       **Paying For The Arbitration.**

(a)     Except in the case of offers of judgment (such as under Federal Rule of Civil Procedure 68 or any applicable state equivalents), each party will pay the fees for its, his or her own attorneys and any costs that are not unique to arbitration, subject to any remedies to which that party may later be entitled under applicable law.

(b)     Each party shall follow the JAMS Rules applicable to initial arbitration filing fees, except that your portion of any initial arbitration filing fee shall not exceed the amount you would be required to pay to initiate a lawsuit in federal court in the jurisdiction where the arbitration will be conducted.  After (and only after) you have paid your portion of any initial arbitration filing fee, we will make up the difference, if any, between the fee you have paid and the amount required by the JAMS Rules.

(c)     In all cases where required by law, we will pay the Arbitrator's fees, as well as all fees and costs unique to arbitration.  Otherwise, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.  You agree to not oppose any negotiations between JAMS and Uber relating only to our fees.

**13.7.**          **The Arbitration Hearing And Award.**  Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief.  The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator.  The Arbitrator shall apply applicable controlling law and will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

**13.8.**          **Your Right To Opt Out Of This Arbitration Provision.**

(a)     Agreeing to this Arbitration Provision is not a mandatory condition of your contractual relationship with us.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision (subject to the pending litigation provision in Section 13.2, and the limitations set forth in this Section 13.8).  To do so, within 30 days of the date that this Agreement is electronically accepted by you, you must send an electronic email from the email address associated with your driver account to optout@uber.com, stating your intent to opt out of this Arbitration Provision, as well as your name, the phone number associated with your driver account, and the city in which you reside.

(b)     An email sent by your agent or representative (including your counsel) shall not be effective.  Your email may opt out yourself only, and any email that purports to opt out anyone other than yourself shall be void as to any others.  Should you not opt out of this Arbitration Provision within the 30-day period, you and Uber shall be bound by the terms of this Arbitration Provision.  You will not be subject to retaliation if you exercise your right to opt out of this Arbitration Provision.

(c)       If you opt out of this Arbitration Provision and at the time of your receipt of this Agreement you were bound by an existing agreement to arbitrate disputes arising out of or related to your use of our Platform and Driver App, that existing arbitration agreement will remain in full force and effect.

(d)       Neither your acceptance of this Agreement nor your decision to opt out of this Arbitration Provision will affect any obligation you have to arbitrate disputes not specified in this Arbitration Provision pursuant to any other agreement you have with us or any of our subsidiaries or affiliate entities.  Likewise, your acceptance of or decision to opt out of any other arbitration agreement you have with us or any of our subsidiaries or affiliate entities shall not affect any obligation you have to arbitrate claims pursuant to this Arbitration Provision.

**13.9.       Enforcement Of This Arbitration Provision**.  You have the right to consult with counsel of your choice concerning this Arbitration Provision and to be represented by counsel at any stage during the arbitration process.  Except as provided in Sections 13.2 and 13.8 of this Arbitration Provision, this Arbitration Provision replaces prior agreements regarding the arbitration of disputes and is the full and complete agreement relating to the formal resolution of disputes covered by this Arbitration Provision.  In the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.  This Arbitration Provision will survive the termination of your relationship with us, and it will continue to apply if your relationship with us is ended but later renewed.

**By clicking "Yes, I agree," I expressly acknowledge that I have read, understood, and considered the consequences of this Agreement, that I agree to be bound by the terms of this Agreement, and that I am legally competent to enter into this Agreement with Uber.**



Groups

Conversations

Search conversations...

←

## Optout of Arbitration Provision/ Agreement for Kent J. Hassell   1 view

**Kent Hassell** ████████████████

to optout@uber.com

February 3, 2020

Dear Uber:

I am hereby opting out of your arbitration provision, in the agreement.

Driver name, telephone, city of residence, email address is below:



Kent J. Hassell
Telephone: ███████████
Santa Ana, ███████████

If you have any questions or require further information, feel free to contact me.

Sincerely,

Kent J. Hassell

↞ Reply all       ↞ Reply to author       ➡ Forward