3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5

6    KENT HASSELL,                          Case No.  20-cv-04062-PJH

7              Plaintiff,
                                            **ORDER GRANTING IN PART AND**
8         v.                                **DENYING IN PART MOTION TO**
                                            **DISMISS FIRST AMENDED**
9    UBER TECHNOLOGIES, INC.,                **COMPLAINT AND DENYING MOTION**
                                            **TO STRIKE CERTAIN CLASS**
10             Defendant.                    **ALLEGATIONS**

11                                           Re: Dkt. No. 37

12          Defendant Uber Technologies, Inc.'s d/b/a Uber Eats ("defendant") motion to

13   dismiss plaintiff Kent Hassell's ("plaintiff") first amended complaint ("FAC") and strike

14   certain class allegations came on for hearing before this court on May 6, 2021.  Plaintiff

15   appeared through his counsel, Shannon Liss-Riordan.  Defendant appeared through its

16   counsel, Andrew Spurchise.  Having read the parties' papers and carefully considered

17   their arguments and the relevant legal authority, and good cause appearing, the court

18   hereby **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss and

19   **DENIES** defendant's motion to strike.

20                                **BACKGROUND**

21          This case is a putative wage and hour class action premised on the alleged

22   violation of various California labor laws.  Defendant provides food delivery services

23   through its "Uber Eats" mobile phone application (the "Uber Eats App").  Dkt. 33 (FAC) ¶

24   2, 10-11.  Plaintiff has worked as an Uber Eats driver since January 2020.  Id. ¶ 6.

25   Plaintiff seeks to certify a class comprising "all Uber Eats drivers who have worked in

26   California."  Id. ¶ 49.

27          The instant order represents the court's second substantive consideration of

28   plaintiff's pleadings.  On December 7, 2020, the court dismissed all claims alleged in

plaintiff's original complaint. Dkt. 30 (the "December 7, 2020 order") at 20. To the extent plaintiff premised his claim for declaratory relief on past violations, the court dismissed that claim with prejudice. Id. at 18. The court permitted plaintiff to amend all other claims. Id. The court directed plaintiff to correct all factual deficiencies in the remaining claims and follow certain instructions when amending his minimum wage and overtime claims. Id. The court will detail its December 7, 2020 order as necessary in the analysis below.

On January 4, 2021, plaintiff filed his FAC. Dkt. 33. In it, plaintiff maintains substantively identical background and class allegations to those proffered in his original complaint. Dkt. 33-1 (redline comparing original complaint with FAC). Plaintiff continues to allege that, since the California Supreme Court's decision in Dynamex Operations West v. Superior Court, 4 Cal. 5th 903 (2018) (Dynamex) and the California state legislature's passage of Assembly Bill 5 (A.B. 5) (previously codified at Labor Code § 2750.3 but recodified at Labor Code § 2775), defendant has misclassified plaintiff as an "independent contractor" rather than an "employee." FAC ¶¶ 2-4, 13-25, 46-47. Based on that misclassification allegation, plaintiff brings claims for the following:

1. Violation of Labor Code § 2802 and the Industrial Welfare Commissions ("IWC") Wage Order 9-2001, Cal. Code Regs. tit. 8, § 11090 ("Wage Order 9"), premised on defendant's failure to reimburse drivers "for expenses they paid," including "gas, insurance, car maintenance, and phone and data charges." Id. ¶¶ 58-59.

2. Violation of Labor Code §§ 1197, 1194, 1182.12, 1194.2, 1197.1, 1199, and Wage Order 9 premised on defendant's failure "to ensure its delivery drivers receive minimum wage for all hours worked." Id. ¶¶ 60-61.

3. Violation of Labor Code §§ 1194, 1198, 510, 554, and 2750.3, and Wage Order 9 premised on defendant's failure "to pay its employees the appropriate overtime premium for overtime hours worked as required by California law." Id. ¶¶ 62-63.

4. Violation of Labor Code § 226(a) and Wage Order 9 premised on defendant's failure to provide accurate wage statements. Id. ¶¶ 64-65.

5. Violation of Business & Professions Code § 17200, *et. seq.* (§ 17200), premised on defendant's purported violations of Labor Code §§ 2802, 1194, 1198, 510, 554, 1197, 1194, 1182.12, 1194.2, 1197.1, 226.8, 226(a), and 246. Id. ¶¶ 66-69.

In his FAC, plaintiff adds allegations to each of the above claims. Dkt. 33-1 ¶¶ 2 n.1, 27-48 (redline showing changes to similar claims alleged in the complaint). The court will detail those additional allegations in its analysis below.

On February 1, 2021, defendant filed the instant motion. Dkt. 37. In it, defendant asks the court to dismiss all claims alleged in the FAC. Id. Defendant also asks the court to strike the FAC's class allegations to the extent plaintiff seeks class certification "of those bound by arbitration agreements with class action waivers." Id. at 8.

The court addresses each request in turn below.

## DISCUSSION

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

### B. Motion to Dismiss Analysis

In its opening brief, defendant argues that plaintiff's claims fail for two major independent reasons. First, defendant asserts that Proposition 22, a ballot initiative approved by California voters in the November 2020 election, "abates" all claims alleged

1  in the FAC (the "abatement argument").  Dkt. 37 at 13-14.  On December 16, 2020,

2  California codified Proposition 22 at Business & Professions Code §§ 7448-7467.  The

3  section at the heart of defendant's abatement argument is Business & Professions Code

4  § 7451.  The court will specifically refer to that section, as opposed to the uncodified

5  proposition more generally.

6      Second, defendant asserts that, except the claim for failure to reimburse business

7  expenses, all claims alleged in the FAC lack sufficient factual allegations.  Id. at 14-28.

8      At the outset, the court notes that the abatement argument appears to raise novel

9  questions in a rapidly developing area of California law.  That novelty aside, the parties'

10  briefing on the issues implicated by that argument falls short.  However, this action is not

11  the court's first pass on the abatement argument.

12      In Nicolas v. Uber Technologies, Inc., another action against defendant that is also

13  on the undersigned's docket, the court previously permitted the California Employment

14  Lawyers Association and the Partnership for Working Families ("Amici") to file an amicus

15  brief addressing a similar abatement argument.  Nicolas, 19-cv-8228-PJH, Dkt. 65

16  (permitting leave to file Amici brief lodged at docket 58-1).

17      At oral argument on the motion at hand, plaintiff sought to "incorporate by

18  reference" Amici's brief as part of his position.  On May 20, 2021, the parties filed a

19  stipulation requesting that the court permit them to formally file that brief on this action's

20  docket.  Dkt. 48.  As part of that stipulation, the parties further requested that the court

21  permit defendant to file a response to Amici's brief and plaintiff to file a reply to such

22  response.  Id.  The court granted the parties' request.  Dkt. 49.  The court has considered

23  the above-referenced filings on the abatement issue.[1]

24      The court will now address each of defendant's major arguments in turn below.

25

26  _____

27  [1] When filing the Amici brief in this action, the parties failed to remove the electronic case filing ("ECF") generated header from the Nicolas action.  Given their failure, the Amici brief filed at docket 48 includes two overlapping ECF headers, neither of which is legible.

28  To avoid confusion, the court will cite the Amici brief filed in the Nicolas action at docket 58-1.

**1.    The Court Denies Defendant's Motion to the Extent Defendant Asserts that Business & Professions Code § 7451 Abates Plaintiff's Labor Code Claims**

In their papers, the parties and Amici cite numerous statutes and doctrines as purportedly authoritative on the abatement argument. Those rules include the abatement doctrine, the repeal doctrine, the retroactivity doctrine, the rationale underlying <u>Dynamex</u>, as well as the text of the Business & Professions Code § 7451 and Labor Code § 2775.

These authorities are voluminous and wide-ranging. The particular language in the cited statutes is critical and the distinctions between the cited doctrines are nuanced. Given these complexities, the court will divide its discussion on the abatement argument into two sections. First, the court will summarize the parties' (and Amici's) positions and concurrently detail the statutes and doctrines underlying their positions. Second, following that summary, the court will identify and address the shortcomings in both sides' positions. In light of such shortcomings, the court cannot now conclusively determine whether (or not) Business & Professions Code § 7451 abates plaintiff's claims. Thus, the court denies defendant's motion to the extent it is premised on abatement. The court makes this finding without prejudice to defendant's ability to again raise this argument on a motion for summary judgment following an opportunity for merits-based discovery.[2]

**a.    The Proffered Arguments and Relevant Legal Rules**

On April 30, 2018, the California Supreme Court issued its <u>Dynamex</u> decision. In that case, the court considered the following:

> Here we must decide what standard applies, under California law, in determining whether workers should be classified as employees or as independent contractors *for purposes of California wage orders*, which impose obligations relating to the minimum wages, maximum hours, and a limited number of very basic working conditions (such as minimally required meal and rest breaks) of California employees. <u>Dynamex</u>, 4 Cal. 5th 903, 913-14 (emphasis in the original) (footnote omitted).

---

[2] On June 9, 2021, the Ninth Circuit in <u>Lawson v. GrubHub Holdings, Inc.</u>, No. 18-15386 heard oral argument on a materially similar abatement issue. If the Ninth Circuit addresses that issue, the parties should discuss it in any motion for summary judgment.

5

Ultimately, the court in <u>Dynamex</u> held that the so-called ABC test applied to determine whether a worker qualifies as an "employee" or "independent contractor" for purposes of California's wage orders. 4 Cal. 5th at 964. In effect, that test creates a rebuttable presumption that a worker is an "employee," as opposed to an "independent contractor. <u>Id.</u> To rebut that presumption, a "hiring entity" (i.e., a purported employer) must establish all of the following three factors (hence, the "A," "B," "C"):

> A. That the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.
>
> B. That the worker performs work that is outside the usual course of the hiring entity's business.
>
> C. That the worker is customarily engaged in an independently established trade, occupation, or business, the worker should be considered an employee and the hiring business an employer under the suffer or permit to work standard in wage orders. <u>Id.</u>

In a footnote, the court in <u>Dynamex</u> observed that this test appears in various jurisdictions in one form or another. <u>Id.</u> at 956 n.23. It further noted that the ABC conditions "set forth" by it "track[] the Massachusetts version of the ABC test." <u>Id.</u>

To support its adoption of the ABC test, the court in <u>Dynamex</u> explained that:

> In [its] view, this interpretation of the suffer or permit to work standard is faithful to its history and to the fundamental purpose of the wage orders and will provide greater clarity and consistency, and less opportunity for manipulation, than a test or standard that invariably requires the consideration and weighing of a significant number of disparate factors on a case-by-case basis. <u>Id.</u> at 964.

Apparently, the California Supreme Court was not alone in its "view" of how to classify employees for purposes of the state's wage orders. On September 18, 2019, following the <u>Dynamex</u> decision, the California state legislature passed A.B. 5, which, as suggested above, codified the ABC conditions articulated in <u>Dynamex</u> as part of the Labor Code. That statute took effect on January 1, 2020. Cal. Lab. Code § 2750.3.

For reasons unknown to this court, the legislature subsequently repealed Labor Code § 2750.3 and then recodified its standard at § 2775. That recodification took effect

1   on September 4, 2020.  To date, the ABC test remains codified at Labor Code § 2775.

2       Fast-forward a few months.  California voters passed Proposition 22.  The relevant

3   portion of that proposition appears at Business & Professions Code § 7451.  That section

4   states the following:

> Notwithstanding any other provision of law, including, but not limited to, the Labor Code . . . , an app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company if the following conditions are met:
>
> a. The network company does not unilaterally prescribe specific dates, times of day, or a minimum number of hours during which the app-based driver must be logged into the network company's online-enabled application or platform.
>
> b. The network company does not require the app-based driver to accept any specific rideshare service or delivery service request as a condition of maintaining access to the network company's online-enabled application or platform.
>
> c. The network company does not restrict the app-based driver from performing rideshare services or delivery services through other network companies except during engaged time.
>
> d. The network company does not restrict the app-based driver from working in any other lawful occupation or business.  Cal. Bus. & Prof. Code § 7451.

18      The above sequence of legal developments lies at the core of defendant's

19  abatement argument.  In its opening brief, defendant asserts that Business & Professions

20  Code § 7451 "effectively repealed" the ABC test "as to delivery people."  Dkt. 37 at 13.

21  According to defendant, plaintiff "makes no effort" to allege that defendant fails to satisfy

22  any of the four conditions set forth in Business & Professions Code § 7451.  Id.  Thus,

23  defendant says, "at a minimum," the court should dismiss plaintiff's claims "to the extent

24  they are based on the time period post-dating [Business & Professions Code § 7451's]

25  effective date of December 16, 2020."  Id.

26      But then defendant seeks more.  Defendant says that the court must dismiss

27  plaintiff's claims (regardless of when the underlying violation occurred) under California's

28  abatement doctrine.  Id. at 13-14.  To support that contention, defendant principally relies

7

on the California Supreme Court's decision in <u>Governing Bd. v. Mann</u>, 18 Cal. 3d 819

(1977) ("<u>Mann</u>") and the Court of Appeals' decision in <u>Zipperer v. County of Santa Clara</u>,

133 Cal. App. 4th 1013, <u>as modified</u> (Oct. 28, 2005) ("<u>Zipperer</u>").

In <u>Mann</u>, the California Supreme Court has recognized that:

> Although the courts normally construe statutes to operate prospectively, the courts correlatively hold under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of the statute without a saving clause will terminate all pending actions based thereon. <u>Mann</u>, 18 Cal. 3d at 829.

The court in <u>Mann</u> observed that this rule's "most familiar application is in the criminal realm," however, "[a]s a host of California cases demonstrate . . . [its] reach . . . has never been confined solely to criminal or quasi-criminal matters." <u>Id.</u> at 830.

More recently, the court in <u>Zipperer</u> construed the above-referenced rule to mean:

> [I]n other words, where the Legislature has conferred a remedy and withdraws it by amendment or repeal of the remedial statute, the new statutory scheme may be applied to pending actions without triggering retrospectivity concerns . . . <u>Zipperer</u>, 133 Cal. App. 4th at 1023.

The court in <u>Zipperer</u> added that "legislative action can effect a partial repeal of an existing statute . . . The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time." <u>Id.</u> To determine whether a new statute terminates a preexisting claim, the court in <u>Zipperer</u> articulated the following four factors:

1. The statutory nature of the subject claim.

2. The unvested nature of the claimed rights.

3. The timing of the elimination of those rights.

4. The nature of the mechanism by which the right of action was

   eliminated. <u>Id.</u>

With respect to the second factor, the court in <u>Zipperer</u> stated:

> Repeal of a remedial statute destroys a pending statutory action unless 'vested or contractual rights have arisen' under the statute. . . . Until it is fully enforced, a statutory remedy is

merely an 'inchoate, incomplete, and unperfected right,' which is subject to legislative abolition. Id. at 1024.

With respect to the third factor, the court in Zipperer stated:

> Whenever the Legislature eliminates a statutory remedy 'before a judgment becomes final, the legislative act destroys the right of action.' . . . Repeal thus 'wipes out the cause of action unless the same has been merged into a final judgment.' . . . 'If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal.' Id.

With respect to the fourth factor, the court in Zipperer explained:

> Finally, we turn to the legislative mechanism by which the right of action is abolished. Typically, that mechanism is repeal or amendment of the remedial statute. . . . But we know of no rule of law that limits the Legislature to those methods. To the contrary, . . . even where 'the words of the . . . statute are not expressly words of repeal without a saving clause . . . the effect is the same in so far as the application of the principles is concerned when the legislature by apt expression has withdrawn the right and remedy in particular cases, including all pending actions based thereon.'
>
> . . .
>
> The critical point is that 'the legislature may take away the right of action itself.' . . . As noted above, we look to the substance of the legislation—not its label—to determine whether it operates as a repeal. . . . The pivotal issue is whether the legislation constitutes 'a substantial reversal of legislative policy' that 'represents the adoption of an entirely new philosophy' vis-à-vis the prior enactment." Id. at 1024-25.

In its opening brief, defendant asserts that all four Zipperer factors cut in favor of abatement. Dkt. 37 at 14. To support that assertion, defendant proffers only a handful of case string cites and a brief reference to the 2020 California Voter Guide. Id.

In his opposition, plaintiff disagrees. Dkt. 43 at 10-11. First, plaintiff asserts that his claims resting on post-December 16, 2020 violations may survive at this stage of the litigation because "it is yet to be determined" whether defendant complied with Business & Professions Code § 7451's four conditions. Id. at 10 n.1.

Second, plaintiff challenges defendant's assertion that Business & Professions Code § 7451 satisfies the first and fourth Zipperer factors. In particular, plaintiff asserts that its misclassification allegation is premised not only on Labor Code § 2775 but also on

9

Dynamex. Id. at 10. Further, plaintiff argues that there has been "no repeal" of Labor Code § 2775, albeit expressly or by implication. Id. at 11. To support that argument, plaintiff relies on another California Supreme Court authority, Western Oil & Gas Ass'n v. Monterey Bay Unified Air Pollution Control, 49 Cal. 3d 408 (1989) ("Western Oil"). Id.

In Western Oil, the California Supreme Court recognized that a statute may be "repeal[ed] by implication." Western Oil, 49 Cal. 3d at 419. It cautioned, however, that "[a]ll presumptions are against" such a repeal. Id. It explained that "[t]he presumption is strong where the prior act has been generally understood and acted upon." Id.

The party arguing repeal bears the burden of overcoming this presumption. Id. at 420-22 (detailing shortcomings in appellant's showing when rejecting that party's argument that subsequent authority impliedly repealed prior statutory authority). Such party may meet that burden only if it shows that two conditions are present. First, "the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation . . . There must be *no possibility* of concurrent operation." Id. at 419-20 (emphasis in the original). Second, a subsequent statute must "give[] *undebatable evidence* of an intent to supersede the earlier" statute. Id. at 420 (emphasis in the original).

Plaintiff asserts that neither requirement for showing that Business Professions Code § 7451 impliedly repeals Labor Code § 2775 is met here. First, plaintiff argues that both sections "can and do operate concurrently." Dkt. 43 at 11. Plaintiff explains that Labor Code § 2775 "mandates an ABC test for employee status" and Business & Professions Code § 7451 "creates a narrow exception to [Labor Code § 2775] that applies only to certain 'app-based drivers' and *only if* the companies meet a set of stringent conditions." Dkt. 43 at 11 (emphasis in the original). Plaintiff also points out that Business & Professions Code § 7451 "does not preclude companies like [defendant] from electing to classify their drivers as employees if they so choose." Id.

Second, plaintiff asserts that defendant lacks "undebatable evidence" proving that Business & Professions Code § 7451 "was intended to affect [sic] a repeal of [Labor

10

Code § 2775] . . ."  Id. at 11.  In a footnote, plaintiff adds that defendant may not argue

that Business & Professions Code § 7451 "applies retroactively."  Id. at 11 n.2.

In its reply, defendant primarily focuses on the fourth Zipperer factor.  Dkt. 44 at

10.  First, defendant argues that Business & Professions Code § 7451 repealed Labor

Code § 2775 because the former section's use of the prefatory clause "[n]otwithstanding

any other provision of law" shows that the "substance" of the former section sought to

"operate as an repeal."  Id. at 10-11.

Second, in a single paragraph, defendant characterizes plaintiff's reliance on

Dynamex as an independent basis for his misclassification allegation as an "attempt[] to

split hairs."  Id. at 11.  Defendant then summarily dismisses the doctrine of retroactivity as

"irrelevant" to its abatement argument.  Id. at 12-13.

In their brief, Amici urge the court to reject defendant's abatement argument for

multiple reasons.  First, like plaintiff, Amici assert that Business & Professions Code §

7451 did not repeal Labor Code § 2775.  19-cv-8228, Dkt. 58-1 at 10-17.

More importantly, though, Amici expand on that argument.  They add that

Business & Professions Code § 7451 did not repeal the wage orders interpreted and

relied on by the court in Dynamex when it articulated the ABC test for purposes of

classifying workers under California law.  Id. at 14.  To substantiate that assertion, Amici

address the conditions stated in Western Oil as necessary to show an implied repeal.

With respect to the first condition, Amici explain that defendant failed to offer any

evidence showing that California voters "intended to strip" drivers of their "right to wage

protections for work already performed while simultaneously guaranteeing wage

protections for future work."  Id. at 11.  In relevant part, Amici criticize the 2020 California

Voter Guide as failing to even mention Labor Code § 2775.  Id. at 11-12.

With respect to the second condition, Amici assert that defendant failed to show

that California Labor Code § 2775 has "no possibility of concurrent operation" with

Business & Professions Code § 7451 or the wage orders.  Id. at 13-16.  Amici explain

that Business & Professions Code § 7451 qualifies as a "specific statute" that, in some

circumstances, provides an "exception" to the "Labor Code and Wage Orders," which qualify as "general statutes upon which [drivers] rely for claims based on conduct before [Business & Professions Code § 7451's] passage." Id. at 14. Amici elaborate that Business & Professions Code § 7451 does not apply if a network company fails to satisfy any one of its four conditions and that, in any event, such company may choose not to comply with § 7451's conditions and thus instead "be bound by the law created by [California Labor Code § 2775]." Id.

Second, Amici assert that Business & Professions Code § 7451 does not abate any authority underlying plaintiff's misclassification allegation because that code contains a general savings clause at Business & Professions Code § 4. Id. at 17. According to Amici, Business & Professions Code § 12 extends § 4's general savings clause to any amendment to the Business & Professions Code, including, for example, § 7451. Id.

Third, Amici assert that, despite defendant's contention, plaintiff's claims are premised in part on common law. Id. at 17-19. Amici acknowledge that Labor Code § 2775 appears statutory in nature and Dynamex interpreted California's wage orders. Id. at 18. Amici say, however, that both those authorities "merely clarified every worker's common law right to reasonable compensation for work performed." Id. To support its explanation, Amici cite Loehr v. Ventura Cty. Cmty. Coll. Dist., 147 Cal. App. 3d 1071 (1983) for the proposition that "earned but unpaid salary or wages are vested property rights." Id. Amici also cite Sims v. AT&T Mobility Servs. LLC, 955 F. Supp. 2d 1110 (E.D. Cal. 2013) for the proposition that "employees were entitled to recover unpaid wages and overtime compensation at common law." Id.

Fourth, Amici assert that Business & Professions Code § 7451 may not "retroactively apply" to plaintiff's misclassification allegation because such application "would violate the Due Process Clause." Id. at 19. According to Amici, plaintiff has a "vested property right" in his "unpaid wages" and any "claim for those wages." Id. Amici suggest that, because a finding by this court that Business & Professions Code § 7451 retroactively applies would deprive plaintiff of his vested rights, the court should invoke

the doctrine of constitutional avoidance to "reject" such finding. <u>Id.</u> at 19-20.

In its response to Amici's brief, defendant proffers six counterarguments. First, defendant says that Amici's brief does not address its abatement argument. Dkt. 50 at 2.

Second, defendant asserts that Amici mistakenly frame its abatement argument as a retroactivity issue. <u>Id.</u> Defendant explains that the abatement doctrine focuses on terminating a preexisting claim, whereas the retroactivity doctrine applies when a statute imposes new liability for prior lawful actions. <u>Id.</u> To support that distinction, defendant cites the California Supreme Court's decision in <u>Callet v. Alioto</u>, 210 Cal. 65, 67 (1930) ("<u>Callet</u>"). In that case, the California Supreme Court recognized the following principles:

> ***It is too well settled*** to require citation of authority that in the absence of a clearly expressed intention to the contrary, every statute will be construed so as not to affect pending causes of action. Or, as the rule is generally stated, every statute will be construed to operate prospectively and will not be given a retrospective effect, unless the intention that it should have that effect is clearly expressed. ***It is also a general rule***, subject to certain limitations not necessary to discuss here, that a cause of action or remedy dependent on a statute falls with a repeal of the statute, even after the action thereon is pending, in the absence of a saving clause in the repealing statute.
>
> . . .
>
> The justification for this rule is that all statutory remedies are pursued with full realization that the Legislature may abolish the right to recover at any time.
>
> . . .
>
> This rule only applies when the right in question is a statutory right and does not apply to an existing right of action which has accrued to a person under the rules of the common law, or by virtue of a statute codifying the common law. In such a case, it is generally stated that the cause of action is a vested property right which may not be impaired by legislation. In other words, the repeal of such a statute or of such a right should not be construed to affect existing causes of action. <u>Callet</u>, 210 Cal. at 67-68 (emphasis added).

Third, defendant asserts that, for the abatement doctrine to apply, defendant need not show that Business & Professions Code § 7451 repealed Labor Code § 2775. Dkt. 50 at 3. To the contrary, defendant explains, the abatement doctrine may extend to circumstances when "voters leave the original language in a statute and merely create a

safe harbor for certain litigants because the voters still have taken away the right of action itself." Id. In any event, defendant asserts that Business & Professions Code § 7451 did repeal Labor Code § 2775. Id. at 3-4. Defendant says that the former section's use of the clause "notwithstanding any other provision of law" provides "undebatable evidence" of an intent to supersede an earlier enactment. Id.

Fourth, defendant asserts that plaintiff may not rely on the Business & Professions Code's general savings clause to preserve his claims. Id. at 4. Citing Mann, defendant argues that a claim resting on a superseded statute "falls . . . in the absence of a savings clause *in the repealing statute*," namely Business & Professions Code § 7451. Id.

Relatedly, defendant argues that the general savings clause provisions cited by Amici (Business & Professions Code § 4 and § 12) instead sought only to preserve the statutes in effect when the Business & Professions Code was created in 1937. Id. at 4. To support that construction of those sections, defendant relies on a 2005 decision by Judge Whyte, Palmer v. Stassimos, 419 F. Supp. 2d 1151 (N.D. Cal. 2005), to distinguish the case law parenthetically cited by Amici to support its general savings clause argument, Sobey v. Molony, 40 Cal. App. 2d 381 (1940). Defendant then adds that other California codes contain identical provisions to those cited by Amici and that numerous courts, interpreting such provisions, have "rejected arguments against abatement." Id. at 5. Thus, defendant says, Amici's proffered interpretation asks the court "to find every case abating claims in the state over the last century . . . wrongly decided." Id.

Fifth, defendant asserts that Amici's argument about the common law nature of plaintiff's claim "just begs the question," namely "whether plaintiff is an employee." Id. Defendant then asserts that the California Supreme Court predicated Dynamex on only the wage orders. Id. at 6. Defendant suggests that plaintiff's misclassification allegations thus "derives solely from statute." Id.

Sixth, defendant asserts that, if applied, the abatement doctrine would not violate plaintiff's rights under the Due Process Clause. Id. at 7. Defendant explains that Amici's Due Process concerns conflate the retroactivity doctrine with abatement and would arise

14

only when a statute attempts to "unwind a final judgment."  Id.

In its reply to defendant's response, plaintiff proffers four rebuttals.  First, plaintiff asserts that Business & Professions Code § 7451 did not repeal Labor Code § 2775. Dkt. 51 at 2-3.  Citing now-partially abrogated authority, <u>Stop Youth Addiction, Inc. v. Lucky Stores, Inc.</u>, 17 Cal. 4th 553, 569 (1998), plaintiff argues that the court cannot find an implied repeal here because defendant fails to proffer any evidence that voters "intended to extinguish delivery drivers' ability to bring misclassification actions to recover unpaid wages earned before [Business & Professions Code § 7451] took effect."  <u>Id.</u> at 3.

Plaintiff adds that defendant's reliance on Business & Profession Code § 7451's "notwithstanding any other provision of law" clause does not compel the inference it "inten[ded] to repeal [Labor Code § 2775] with respect to app-based workers."  <u>Id.</u> Plaintiff says that the court must construe that section in its broader statutory context.  <u>Id.</u>

Second, plaintiff repeats Amici's arguments concerning the purported applicability of Business & Professions Code's general savings clause. Dkt. 51 at 4.  Plaintiff adds that, because defendant "pitched [Business & Professions Code § 7451] to voters as a change to the wage and hour benefits and protections owed to app-based workers," the court "should find an implied savings clause" in Business & Professions Code § 7451.  <u>Id.</u>

Third, again parroting Amici, plaintiff asserts that his claims are "rooted in the common law" and that he has a vested property interest in his unpaid wages.  <u>Id.</u> at 5. Tucked away in a footnote, plaintiff vaguely cross-cites <u>Borella & Sons, Inc. v. Dep't of Indus. Rel.</u>, 48 Cal. 3d 341 (1989) and <u>Dynamex</u> for the proposition that the "ABC test can be traced back to factors traditionally considered under the common law misclassification test, including the right to control."  <u>Id.</u> at 5 n.5.

Fourth, plaintiff asserts that he maintains a vested property right to his unpaid wages because "he already performed the work that is currently unpaid" and multiple courts have indicated that "drivers are employees under the ABC test."  <u>Id.</u> at 5.

/ / /

/ / /

15

b.     **The Court Cannot Reach a Final Resolution of the Abatement Argument on the Present Record**

The court finds that the arguments and evidence proffered by both sides on this issue does not permit it to make a conclusive determination on whether Business & Professions Code § 7451 abates the authority underlying plaintiff's misclassification allegation and, thus, his claims.  Given that, the court denies defendant's motion to the extent it is premised on abatement.  To guide the parties in any future motion for summary judgment, the court details what it determines are the deficiencies in each party's position.

i.     **Defendant Failed to Show that the Abatement Doctrine Applies**

The court finds that defendant failed to show that the abatement doctrine applies to plaintiff's claims for at least three independent reasons.

***First***, defendant fails to justify its assertion that plaintiff must affirmatively allege defendant's non-compliance with any of Business & Professions Code § 7451's four conditions when claiming that he qualifies as an employee under the Labor Code.

As detailed above, the text of Business & Professions Code § 7451 states that "an app-based driver is an independent contractor . . . ***if*** the following conditions ***are*** met . . . [setting forth four conditions]."  Cal. Bus. & Prof. Code § 7451 (emphasis added).  As shown in bold, this section's prefatory sentence is written in the passive voice.  It does not address whether the "app-based driver" or "network company" bears the burden of showing that the four conditions are, or are not, satisfied.

At oral argument, the court questioned counsel for defendant on this exact point.  Counsel failed to identify any authority or legal justification to support defendant's construction.  At best, counsel could say only that this section "clearly intended" to reverse the ABC test and that, "unquestionably," defendant fits within its four conditions.

The court finds counsel's summary assurances insufficient.  Absent any authority, the court rejects defendant's argument that plaintiff must affirmatively allege defendant's

16

non-compliance with the subject conditions in his complaint. Given that that argument serves as the sole reason for defendant's challenge to the actionability of any post-December 16, 2020 violation, Dkt. 37 at 13; Dkt. 44 at 12 n.4, plaintiff may continue to base his claims on such violations.

**Second**, defendant failed to show that the wage orders forming the basis of the California Supreme Court's decision in Dynamex do not—themselves—represent a codification of pre-wage order California common law principles for purposes of determining a worker's employment classification. The court reviewed the portions of Dynamex summarily cited by defendant in support of its position that "California's ABC test derives solely from statute." Dkt. 50 at 6. Those portions merely footnote variations in the ABC test across jurisdictions and describe the wage orders as legislative in nature. The first description is irrelevant. And nobody seriously contests the second.

By arguing abatement, defendant asks this federal court to make an important decision on a novel issue under state law. If defendant further pursues this argument, it should explain why California common law principles do not independently support an employment classification framework akin to the ABC test articulated in Dynamex.

That leads to a separate but related deficiency in defendant's position. Defendant also fails to explain how the Dynamex decision itself does not qualify as common law. The court understands defendant's citation to the California Supreme Court's recent characterization of Dynamex as a "judicial construction of a statute," namely the wage orders. Dkt. 50 at 6. Still, Dynamex is a decision by California's highest court. Its imprimatur on questions of California law carry exceptional weight. Indeed, the Ninth Circuit recently characterized the ABC test articulated in Dynamex and subsequently codified at Labor Code § 2775 as a "judge-made" test. California Trucking Ass'n v. Bonta, 996 F.3d 644, 649 (9th Cir. 2021) ("California's Assembly Bill 5 (AB-5) codified a judge-made test (referred to as the 'ABC test') for classifying workers as either employees or independent contractors."). Again, if defendant further pursues this argument, it must explain why a state high court's decision—independent of the statutory law on which it is

based—does not amount to sufficient authority to avoid the abatement.

**Third**, the court observes a shift in defendant's position on whether, in the first instance, the abatement doctrine requires that Business & Professions Code § 7451 repealed Labor Code § 2775 or the wage orders relied on to support plaintiff's misclassification allegation. In its opening brief, defendant characterizes Business & Professions Code § 7451 as "effectively repeal[ing]" Labor Code § 2775 and thereby "abat[ing]" all of plaintiff's claims. Dkt. 37 at 9. Only after plaintiff points out the requirements for showing an implied repeal, Dkt. 43 at 11, does defendant change course, Dkt. 50 at 3. Pivoting, defendant says "abatement does not require a 'repeal'" because the abatement doctrine "focuses on the *substance* of the legislation, not its *label* or any magic words effectuating repeal." Id. (emphasis in the original).

The court rejects defendant's contention that it need not show a repeal to substantiate its abatement argument. Defendant staked out its position in its opening brief. The court will not now permit it to take an inconsistent one on reply.

That fairness concern aside, the authority that defendant itself cites to support its latest argument tends to show that the abatement doctrine does require a repeal. In Zipperer, the court characterized its fourth factor in terms of repeal. Zipperer, 133 Cal. App. 4th at 1024-25. While only selectively cited by defendant, the court in that case stated, in its entirety, "we look to the substance of the legislation—not its label—to determine whether it **operates as a repeal**." Id. at 1025 (emphasis added). The court in ZIpperer went on to hold that the statutory right at issue in that action "was eliminated by the exemption provision, **which operated as a valid repeal method**." Id. (emphasis added).

With that preliminary issue decided, the next question is whether defendant showed that Business & Professions Code § 7451 either expressly or impliedly repealed Labor Code § 2775 and the wage orders relied on to support plaintiff's misclassification allegation. Defendant does not even attempt to argue that the former section expressly repealed the latter. Thus, the viability of defendant's position on this issue turns on

18

whether it can show a repeal by implication.

The court concludes that defendant failed to satisfy either of the two requirements underlying the implied repeal doctrine. With respect to the first requirement, defendant's argument that Business & Professions Code § 7451's "notwithstanding any other provision of law" clause, Dkt. 50 at 3, *assumes* that that section applies to all labor arrangements in the first instance. It does not. As detailed above, that section delineates four conditions that are necessary to its application. That section says nothing about its application in the event any one condition is not satisfied. In that event, the court may only reasonably construe that section not to apply. In turn, the "notwithstanding any other provision of law" clause (the lynchpin of defendant's argument) is irrelevant, thereby permitting the "concurrent operation" of Labor Code § 2775 and the wage orders.

Defendant also does not address Amici's argument that, even if Business & Professions Code § 7451's four conditions were satisfied, that section does not *require* a network company to treat a worker as an independent contractor. Given that, it appears that a network company may, in any event, opt to proceed on an employer-employee basis. That option undermines any inference that Business & Professions Code § 7451 (on the one hand) and Labor Code § 2775 and the wage orders (on the other hand) are mutually exclusive of one another.

With respect to the second requirement, defendant falls short of proffering "undebatable evidence" that Business & Professions Code § 7451 "inten[ded] to supersede" Labor Code § 2775 and the wage orders interpreted in <u>Dynamex</u>. The 2020 California Voter Guide does not appear to address or otherwise refer to either of the latter statutory authorities when describing Proposition 22 to voters. But even if it had, defendant fails to offer any evidence to support the necessary intermediate inference that voters actually reviewed and relied on that guide before voting. As recent years have shown, voters can receive (dis)information from multiple sources.

Separately, the court finds it notable that defendant fails to offer any evidence addressing the intent of those who drafted Proposition 22. In its brief, Amici raise serious

extrinsic factual questions about defendant's role in the proposition's origination, public promulgation, and passage.  Indeed, those questions implicate important issues on which plaintiff should have the full opportunity to take discovery before the court makes any blanket conclusion about Business & Professions Code § 7451's "intent."

For the above three reasons, the court rejects defendant's argument that Business & Professions Code § 7451 abates plaintiff's claims.

### ii. Plaintiff Failed to Conclusively Establish that the Abatement Doctrine Does Not Apply

Plaintiff need not affirmatively establish that the abatement doctrine does not apply for his action to proceed.  However, in anticipation that defendant will renew its abatement argument on a motion for summary judgment, the court provides these comments regarding the arguments raised by plaintiff and Amici.

*First*, plaintiff mistakenly suggests that defendant must proffer evidence that "either the Legislature or California voters intended to extinguish delivery drivers' ability to bring misclassification actions to recover unpaid wages earned *before* [Business & Professions Code § 7451] took effect."  Dkt. 51 at 2-3 (emphasis added).  That suggestion misunderstands the relevant issue for determining an implied repeal.  Defendant must show evidence of an "intent to supersede" an earlier statute.  Western Oil, 49 Cal. 3d at 410.  That condition says nothing about the need for evidence relating to voters' intent to terminate *preexisting claims* resting on the earlier statute.

*Second*, plaintiff fails to address defendant's argument that the general savings clause detailed in Business & Professions Code § 4 and § 12 preserves only the statutory authority that predated the 1937 codification of the Business & Professions Code.  As defendant points out, at least one court has construed Business & Profession Code § 4 as "not appear[ing] to operate as a savings clause to alterations to statutes already enacted."  Palmer v. Stassinos, 419 F.Supp.2d 1151, 1157 (N.D. Cal. 2005).  In light of the above, the court would likely conclude that the Business & Professions Code's general savings clause does not apply to § 7451.

The court is similarly not persuaded by plaintiff's implied savings clause argument. Like defendant's implied repeal argument, that position depends on evidence of voter intent for passing Proposition 22. Plaintiff may revisit that argument on a motion for summary judgment following an opportunity for discovery.

*Third*, Amici appear to conflate defendant's abatement and repeal arguments with a retroactivity issue. 19-cv-8228, Dkt. 58-1 at 7 ("Apparently recognizing that [Business & Professions Code § 7451] is not retroactive . . . [defendant] invokes the 'statutory repeal' doctrine, which holds that a complete repeal of the statute on which a claim is based may *retroactively* 'abate' that claim.") (emphasis added).

The retroactivity doctrine is distinct from its abatement and repeal counterparts. As explained in Mann, the abatement doctrine focuses on extinguishing preexisting but unvested claims resting solely on statute. Mann, 18 Cal. 3d at 829 ("[T]he courts correlatively hold under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of the statute without a saving clause will terminate all pending actions based thereon.'"). The theory underlying that principle is intuitive—what a legislature gives, a legislature may take. Callet, 210 Cal. 65, 67-68 ("The justification for this rule is that all statutory remedies are pursued with full realization that the Legislature may abolish the right to recover at any time."). As articulated in Western Oil, the repeal doctrine simply provides the analytical framework to determine whether a subsequent statute renders legally inoperative its earlier counterpart. Western Oil, 49 Cal. 3d at 419-22.

That said, when describing the retroactivity concerns, the court in Evangelatos stated that it "is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." 44 Cal. 3d at 1207. Without more, then, the retroactivity and abatement doctrines appear the same. Yet, when construing the abatement doctrine articulated in Mann, the court in Zipperer indicated a difference in those doctrines. 133 Cal. App. 4th at 1023 ("In other words, where 'the Legislature has conferred a remedy and withdraws it by

amendment or repeal of the remedial statute, the new statutory scheme may be applied to pending actions *without triggering retrospectivity concerns*.'") (emphasis added).

More recently, the California Supreme Court in <u>McClung v. Employment Dev. Dep't</u>, 34 Cal. 4th 467 (2004) stated that "[t]he presumption against statutory retroactivity has consistently been explained by reference to the unfairness *of imposing new burdens on persons after the fact*." <u>Id.</u> at 475 (emphasis added). Thus, it appears that the retroactivity doctrine focuses on limiting a subsequent statute's ability to impose *additional* obligations or liability for prior conduct that was lawful under an earlier statute.

Here, neither side asserts that Business & Professions Code § 7451 imposes any additional obligation on plaintiff. Given that, it does not appear that the retroactivity doctrine is at issue.

*Fourth*, Amici and plaintiff overstate the significance of <u>Loehr</u> and <u>Sims</u> when asserting that plaintiff's claims are common law in nature. Both cases are inapposite. In <u>Loehr</u>, plaintiff was uncontestably a former employee of the defendant school district from which he sought unpaid wages. <u>Loehr</u>, 147 Cal. App. 3d at 1076. In <u>Sims</u>, Judge Mendez simply commented on the secondary question of whether an employee could recover unpaid wages under California common law. <u>Sims</u>, 955 F. Supp. 2d at 1117 ("The foregoing authority demonstrates that *employees* were entitled to recover unpaid wages and overtime compensation at common law.") (emphasis added)). Neither authority considered the threshold question at issue here—namely, whether the complaining worker qualifies as an employee under common law.

One final note. With respect to Amici's Due Process clause argument, the court does not offer any opinion. It appears, however, that such concerns arise only if plaintiff qualifies as an employee. 19-cv-8228, Dkt. 58-1 at 19 ("Finally, to the extent Prop 22 did apply retroactively, it would violate the Due Process Clause. In California, unpaid wages are *the employee's* property once they are earned and payable.") (emphasis added).

\*        \*        \*

In short, the court finds that the present record does not support a conclusive

determination on defendant's abatement argument.  Accordingly, except as limited in

Sections B.2.-B.5. below, plaintiff may proceed on his claims for all alleged pre- and post-

December 16, 2020 Labor Code violations.  The court will now analyze the sufficiency of

the allegations proffered by plaintiff in support of each claim.

### 2.    Claim for Failure to Pay Business Expenses

In relevant part, Labor Code § 2802 requires an employer to:

> [I]ndemnify his or her employee for all necessary expenditures
> or losses incurred by the employee in direct consequence of
> the discharge of his or her duties . . . Cal. Lab. Code § 2802(a).

In its December 7, 2020 order, the court identified two deficiencies in this claim.

Dkt. 30 at 4-5.  First, plaintiff failed to allege that he himself incurred any expense when

making deliveries or that defendant failed to reimburse him for such expenses.  Id. at 4.

Second, plaintiff failed to allege that the expenses he incurred were necessary to or in

consequence of his job duties.  Id. at 4-5.

In his FAC, plaintiff adds six allegations to this claim.  FAC ¶¶ 26-31.  Among

them, plaintiff alleges that defendant has not reimbursed him.  Id. ¶ 26.  He further

identifies various categories of costs that he incurred in connection with his deliveries.  Id.

¶¶ 27-31.  Such costs include gas, id. ¶ 27, tires, id. ¶ 28, and cell phone data, id. ¶ 30.

Defendant does not challenge the sufficiency of the allegations underlying this

claim.  The court can reasonably infer that plaintiff's alleged expenses qualify as

necessary and consequential to his delivery responsibilities.  Given the above, the court

concludes that plaintiff remedied the defects identified in the December 7, 2020 order and

has stated a claim for failure to reimburse business expenses.

### 3.    Claims for Failure to Pay Minimum and Overtime Wages

In relevant part, California Labor Code § 1194 provides the following:

> Notwithstanding any agreement to work for a lesser wage, any
> employee receiving less than the legal minimum wage or the
> legal overtime compensation applicable to the employee is
> entitled to recover in a civil action the unpaid balance of the full
> amount of this minimum wage or overtime compensation,
> including interest thereon, reasonable attorney's fees, and
> costs of suit. Cal. Lab. Code § 1194(a).

23

### a.  Failure to Pay Minimum Wage

In its December 7, 2020 order, the court identified two deficiencies in plaintiff's claim for failure to pay minimum wage. Dkt. 30 at 7-10. First, plaintiff based his minimum wage calculation on his accrual of "expenses for mileage driven." Id. at 7. The court explained that, because plaintiff failed to show that he was entitled to reimbursement for any such expenses, his minimum wage calculation was necessarily deficient. Id.

Second, plaintiff failed to explain why "all of his time spent on the Uber Eats Application," particularly his time spent "driving between deliveries while awaiting the next delivery assignment," qualifies as compensable under California law. Id. at 7-10. The court extensively detailed Wage Order 9's definition of "hours worked" and concluded that plaintiff failed to explain how or why the subject time falls within the "subject to the control" or "suffered or permitted to work" clauses of Wage Order 9. Id. at 8-10.

In his FAC, plaintiff adds five allegations to this claim. FAC ¶¶ 32-34, 36-37. Plaintiff alleges that he is subject to defendant's control while awaiting requests for three reasons. First, plaintiff must remain logged into the Uber Eats App between deliveries because that conduct is "the only way for him" to receive new assignments. Id. ¶ 32-33.

Second, plaintiff is "not able to freely engage in personal errands or activities" while awaiting requests because defendant "requires that drivers either accept or reject delivery assignments that Uber Eats populates . . . within several seconds." Id. ¶ 33. Plaintiff explains that if drivers "do not respond to these delivery assignment requests, their 'acceptance rate' will decline, which may ultimately lead to disciplinary measures like suspension or termination." Id. Plaintiff later adds that he does not perform personal errands while waiting between orders "so that he is available to respond to Uber Eats' delivery assignment and avoid a low acceptance rate." Id. ¶ 34.

Third, plaintiff alleges that his time between deliveries is "primarily" for defendant's benefit because, "unless [plaintiff] and other drivers remain logged into the App between deliveries, [defendant] would not have anyone to send delivery assignments and, thus, there would be no one to bring [defendant's] customer their food." Id. ¶ 33.

Separate from the above-listed additions, plaintiff maintains his original complaint's allegations pertaining to defendant's control over how he conducts his work.  Id. ¶¶ 15-17, 21-25.  Notably, plaintiff alleges that defendant "may suspend or terminate delivery drivers who do not accept enough deliveries . . ." Id. ¶ 25.

Independent of his control allegations, plaintiff identifies the July 27, 2020 through August 2, 2020 workweek as a particular period that he did not receive minimum wage.  Id. ¶ 37.  When making that allegation, plaintiff identifies his effective hourly wage rate both with and without accounting for the time spent on the Uber Eats App between deliveries.  Id.  Plaintiff alleges both sets of figures with and without mileage deductions at the Internal Revenue Service ("IRS") standard rate.  Id.  Under those calculations, plaintiff alleges the following effective wage rates:

- When including time spent between deliveries: $10.78 (pre-expense deduction) and $6.59 (post-expense deduction).  Id.
- When excluding time spent between deliveries: $11.02 (pre-expense deduction) and $ 6.74 (post-expense deduction).  Id.

Here, the court concludes that plaintiff has alleged a cognizable claim for failure to pay minimum wage. The court further holds that plaintiff may base such claim on both the time that he spent actively engaged in deliveries (i.e., picking up and dropping off food) and the time that he spent on the Uber Eats App waiting for requests between deliveries for the reasons that follow.

i.      **Plaintiff's Alleged Waiting Time May Qualify as "Hours Worked"**

As used in Wage Order 9, the term "Hours Worked" contains two clauses to determine whether certain time qualifies as compensable work time under California. Cal. Code Regs. tit. 8, § 11090.  First, that definition extends to "the time during which an employee is subject to the control of an employer."  Id.  Second, it includes "all the time the employee is suffered or permitted to work, whether or not required to do so."  Id.  The California Supreme Court has explained that the "control of an employer" clause and the

"suffered or permitted to work" clause establish "independent factors, each of which defines whether certain time spent is compensable as 'hours worked.'" <u>Frlekin v. Apple Inc.</u>, 8 Cal. 5th 1038, 1046 (2020), <u>reh'g denied </u>(May 13, 2020).

In this case, plaintiff asserts only that his waiting time is compensable under the subject to the control of an employer clause.  FAC ¶¶ 25, 32-33.  Plaintiff does not refer to the suffered or permitted to work clause.  Given that election, the court will analyze the sufficiency of his allegations under only the former clause when determining whether the subject waiting time qualifies as compensable under California law.

The California Supreme Court has explained that an employee is subject to the control of its employer when such employer "directs, commands, or restrains an employee from leaving the workplace . . . and thus prevents the employee from using the time effectively for his or her own purposes."  <u>Mendiola v. CPS Sec. Sols., Inc.</u>, 60 Cal. 4th 833, 840 (2015).  In <u>Mendiola</u>, the California Supreme Court identified the following factors as relevant to determine whether an employer maintains control over an employee during his or her on-call time:

- Whether there was an on-premises living requirement.
- Whether there were excessive geographical restrictions on employee's movements.
- Whether the frequency of calls was unduly restrictive.
- Whether a fixed time limit for response was unduly restrictive.
- Whether the on-call employee could easily trade on-call responsibilities.
- Whether use of a pager could ease restrictions.
- Whether the employee had actually engaged in personal activities during call-in time.
- Whether the on-call waiting time . . . is spent primarily for the benefit of the employer and its business.  <u>Id.</u> at 841.

More recently, in <u>Frlekin</u>, the California Supreme Court expanded on the above factors.  It found that additional indication of employer control includes:

- Whether some employee activity is "mandatory in nature."

- Whether the activity is "enforced through disciplinary measures." 8 Cal. 5th at 1056.

The court concludes that plaintiff's allegations pertaining to the fourth and seventh Mendiola factors and both Frlekin factors support a plausible inference that defendant exercises control over him during the time that he spends on the Uber Eats App waiting for requests between deliveries.

First, at paragraph 33, plaintiff plausibly alleges that he faces potential discipline for not responding to a request within a set period. As noted above, plaintiff asserts that defendant requires drivers to "either accept or reject" a delivery request "within several seconds." FAC ¶ 33. Then, immediately following that assertion, plaintiff adds that "if drivers . . . do not respond to these delivery assignments request, their 'acceptance rate' will decline, which may ultimately lead to disciplinary measures . . ." Id.

At the outset, the court notes the indefinite and ambiguous nature of these assertions. Plaintiff does *not* allege that he will face a risk of discipline if he fails to respond to a request *within several seconds*. He alleges only that he faces such risk if he fails to respond. However, the court can and will infer that the referenced discipline extends both to a failure to respond (generally) and a failure to respond within a set period.

In terms of the plausibility of the referenced discipline, plaintiff does *not* elaborate on the likelihood that such discipline would materialize. He asserts only that the risk of it "may" exist. The court finds that—under the circumstances at hand—that assertion satisfies Iqbal/Twombly's plausibility requirement. Ashcroft, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

The court understands that any information pertaining to defendant's disciplinary practices might be in its exclusive possession and, thus, outside the realm of information

27

available to render a verified allegation definitively asserting the subject disciplinary risk. Further, the court prefers to conclusively decide the waiting time compensability issue after the parties have an opportunity to develop an evidentiary record substantiating (or negating) the veracity of plaintiff's control allegations.

Separate but relatedly, the court rejects defendant's fallback contention that the mere act of responding to a request cannot, in any event, qualify as sufficiently restrictive to show control. As articulated in Mendiola, the touchstone for control is whether an employment condition "prevents the employee from using the time effectively for his or her own purposes." Mendiola, 60 Cal. at 833. Without an evidentiary record, the court cannot determine the invasiveness that having to respond to a request imposes on a driver's ability to conduct his or her personal affairs between deliveries. In light of the above, the court finds that paragraph 33 supports an inference of control under Mendiola's fourth factor and both Frlekin factors.

Second, at paragraph 34, plaintiff expressly alleges that he "does not perform personal errands or activities while he is waiting between orders . . ." FAC ¶ 34. Accordingly, the court finds that paragraph 34 supports an inference of control under Mendiola's seventh factor.

Third, at paragraph 25, plaintiff plausibly alleges that he faces potential discipline if he "do[es] not accept enough deliveries." Id. ¶ 25. The court emphasizes that this alleged risk of discipline, which pertains to *accepting* some number of deliveries, is distinct from the corollary risk he purportedly faces for not *responding* to a request within seconds. Compare Id. ¶ 33. If imposed, paragraph 25's alleged quota presupposes that plaintiff wait on the Uber Eats App between deliveries for a subsequent request. That incidental requirement, in turn, implies that the subject waiting time is mandatory. Accordingly, the court finds that paragraph 25 separately supports an inference of control under both Frlekin factors.

Finally, for purposes of guiding the parties in future litigation, the court points out that plaintiff's allegations concerning the remaining Mendiola factors fail to support an

inference of control. With respect to the first and second <u>Mendiola</u> factors, plaintiff does not identify any geographical restriction imposed on him by defendant when logged onto the Uber Eats App and awaiting requests. While plaintiff argues such a restriction in his opposition, Dkt. 43 at 15-16, he omits any like assertion from his verified pleadings.

With respect to the third, fifth, and sixth <u>Mendiola</u> factors, plaintiff fails to proffer any relevant allegation. That leaves only the eighth <u>Mendiola</u> factor. Plaintiff might be correct that defendant's business would fold without drivers waiting for requests between deliveries. <u>Id.</u> ¶ 33. Defendant cannot contest that it monetarily benefits each time a driver waits for an additional request. But plaintiff's allegation does not establish that the subject wait time is ***primarily*** for defendant's benefit. Plaintiff also receives money when he provides rides. He does not explain how or why defendant benefits relatively more than he does from waiting for the next ride. Absent that, plaintiff cannot establish that the eighth <u>Mendiola</u> factor supports an inference of control.

Those shortcomings aside, the court concludes that plaintiff proffered sufficient facts from which to plausibly infer that defendant controls him during the subject waiting time under the fourth and seventh <u>Mendiola</u> factors and both <u>Frlekin</u> factors. Accordingly, plaintiff has shown that the waiting time at issue may qualify as compensable under California law. Given that, plaintiff may proceed on his claim for failure to pay minimum wage based on both the time spent actively engaged in deliveries and that spent waiting for requests between deliveries.

The court expressly limits this holding to the procedural posture at hand. Plaintiff alleges just enough facts to support a plausible inference that defendant exercises control over him during the subject waiting time. In the event a motion for summary judgment shows that plaintiff cannot substantiate such allegations, the court may narrow this claim to only the time spent actively engaged in deliveries.

### ii.      Plaintiff Cured the Remaining Deficiencies in His Claim for Failure to Pay Minimum Wage

At paragraph 37, plaintiff identifies the July 27, 2020 through August 2, 2020

workweek as a particular period during which he did not receive minimum wage.  Plaintiff

alleges that, when accounting for the time spent waiting between requests, he effectively

received $10.78 (pre-business expenses) and $6.59 (post-businesses expenses) for

each hour spent on the Uber Eats App.  Id.  Plaintiff alternatively alleges that, when

excluding such wait time, he effectively received $11.02 (pre-business expenses) or

$6.74 (post-business expenses) for each such hour.  Id.

Under all accounting methods, plaintiff alleges an effective wage rate that falls

below the $13 per hour required under California law in 2020.[3]  Accordingly, the court

finds that plaintiff cured the remaining deficiencies identified in his claim for failure to pay

minimum wage.  Thus, plaintiff may proceed on this claim in its entirety.

### b.    Failure to Pay Overtime Wages

In its December 7, 2020 order, the court identified five deficiencies in plaintiff's

claim for failure to pay overtime.  Dkt. 30 at 10-11.  First, plaintiff failed to satisfy the rule

set forth in Landers v. Quality Commc'ns, Inc., 771 F.3d 638 (9th Cir. 2014), as amended

(Jan. 26, 2015) ("Landers") that he identify a given workweek that he worked over 40

hours without overtime compensation.  Id. at 10.  Second, plaintiff failed to provide

additional supporting detail to allege a plausible claim for failure to pay overtime.  Id.

Third, plaintiff based this claim in part on the time spent waiting between deliveries.  Id.

Fourth, plaintiff failed to allege that he himself was deprived of overtime pay.  Id. at 11.

Fifth, plaintiff failed to allege that his purported overtime included only his performance of

tasks that qualify as legally compensable.  Id.

In his FAC, plaintiff adds two allegations uniquely in support of his claim for failure

to pay overtime.  FAC ¶¶ 39-40.  First, plaintiff clarifies that he worked 44 hours and two

minutes "for the week of February 3, 2020 to February 9, 2020," ***not*** "February 3, 2020 to

February 10, 2020" as he previously mistakenly alleged.  Id. ¶ 39 n.4.  Plaintiff alleges that

the above-referenced 44 hours included "time spent between deliveries while awaiting

---

[3] https://www.dir.ca.gov/dlse/faq_minimumwage.htm

the next delivery assignment." <u>Id.</u>

At paragraph 40, plaintiff identifies three other particular days that he worked in excess of eight hours while "driving to pick up deliveries [and] driving to drop off deliveries only." <u>Id.</u> ¶ 40 (right column in chart). While not expressly stated in the FAC, plaintiff relies on the same waiting time compensability allegations (<u>id.</u> ¶¶ 32-34) proffered in support of his minimum wage claim to support his overtime hours calculation.

The court concludes that plaintiff proffered sufficient facts to state a claim for failure to pay overtime. Importantly, plaintiff identified a specific workweek in which he spent over 40 hours both actively engaged in deliveries and waiting for requests. <u>Id.</u> ¶ 39. Separately, while not necessary given the court's conclusion at Section 3.a.i. about the compensability of plaintiff's waiting time, he also identifies particular days in which he spent over eight hours actively engaged in deliveries. <u>Id.</u> ¶ 40.

Given the above, plaintiff may proceed on his claim for failure to pay overtime wages in its entirety. The court reiterates that, following a motion for summary judgment, it may narrow this claim to only the overtime spent actively engaged in deliveries.

### 4. Claim for Failure to Provide Accurate Wage Statements

California Labor Code § 226 requires an employer to periodically provide its employee an accurate itemized statement in writing that details various categories of information. Cal. Lab. Code § 226(a). Such categories include: (1) gross wages earned; (2) total hours worked; (3) applicable deductions; (4) net wages earned; and (5) all applicable hourly rates in effect during the pay period. <u>Id.</u> To state a claim under § 226, a plaintiff must allege an injury that resulted from the employer's knowing and intentional failure to comply with the above requirements. <u>Id.</u> § 226(e)(1). An employee suffers an injury if the employer fails to provide a wage statement. <u>Id.</u> § 226(e)(2)(A).

In its December 7, 2020 order, the court identified four deficiencies in plaintiff's claim for failure to provide accurate wage statements. Dkt. 30 at 11-12. First, plaintiff did not dispute that this claim is viable only if his other claims for violation of the Labor Code are viable. <u>Id.</u> Second, plaintiff failed to proffer any non-conclusory facts in support of

31

this claim.  Id. at 12.  Third, plaintiff failed to allege that he himself was deprived of an accurate wage statement.  Id.  Fourth, plaintiff failed to provide any detail about the information available in the Uber Eats App.  Id.

In his FAC, plaintiff adds one allegation to this claim.  FAC ¶ 42. In it, plaintiff explains that his pay statements are accessible only through the Uber Eats App.  Id. According to plaintiff, such statements detail the following information:

- Summary of his earnings.
- Trip balances.
- Promotional deals that defendant applied to a delivery.
- A list of all deliveries made during the statement period with the date and time the order was accepted.
- Trip ID.
- The earning per delivery.  Id.

Plaintiff also alleges that information about his "total hours worked (as defined in [paragraph] 32)" is absent from his pay statements.  Id.  Plaintiff adds that these statements do not specify the amount of time plaintiff spent picking up or delivering food or include his hourly wages.  Id.  Lastly, plaintiff notes that, to determine the time spent performing deliveries, he had to log onto the Uber Eats App and manually take the difference between each trip's start and end time and then sum such differences.  Id. n.5.

In its motion, defendant challenges this claim on two bases.  First, defendant asserts that this claim fails because it is "derivative" of the minimum wage and overtime claims.  Dkt. 37 at 21.  Second, defendant asserts that, at minimum, plaintiff may not predicate this claim on time spent between deliveries.  Id. at 22.

The court concludes that plaintiff proffered sufficient facts to state a claim for failure to provide accurate wage statements.  Importantly, as decided above, plaintiff has alleged cognizable claims for failure to pay minimum and overtime wages.  At this stage in the litigation, plaintiff may base such claims on both his time spent actively engaged in deliveries and that spent waiting for requests between deliveries.  Accordingly, the court

1    finds that plaintiff may proceed on this claim without qualification.

2        **5.      Business & Professions Code § 17200 Claim**

3        California Business & Professions Code § 17200 generally prohibits business

4    practices that are unlawful, unfair, or deceptive.  Cal. Bus. & Prof. Code § 17200.  A

5    practice is unlawful if it is forbidden by law.  Walker v. Countrywide Home Loans, Inc., 98

6    Cal. App. 4th 1158, 1170 (2002). Given that, § 17200 "creates an independent action

7    when a practice violates some other law."  Id.

8        In his FAC, plaintiff alleges a materially similar § 17200 claim premised on

9    unlawful conduct to that advanced in his original complaint.  Compare Compl. ¶¶ 57-60

10   with FAC ¶¶ 66-69.  In particular, plaintiff alleges that defendant violated the various

11   Labor Code sections underlying the direct claims analyzed above.  FAC ¶ 67.  Those

12   sections include Labor Code § 2802 (failure to reimburse business expenses), § 1194

13   (failure to pay minimum wage and overtime), and § 226 (failure to provide an accurate

14   wage statement).  Id.  Independent of those sections, plaintiff also alleges that defendant

15   violates Labor Code § 226.8 (willful misclassification of employment status), § 246 (failure

16   to provide sick leave), and § 1197.1 (penalty for failure to pay minimum wage).  Id.[4]

17       In its motion, defendant challenges the § 17200 claim on two major grounds.  First,

18   defendant asserts that plaintiff may not base his § 17200 claim on the same Labor Code

19   sections that he relies on to support his direct claims.  To support that assertion,

20   defendant explains that plaintiff failed to show that he lacks an adequate legal remedy.

21   Dkt. 37 at 22-23.  Second, defendant asserts that plaintiff may not rely on the various

22   other purportedly violated Labor Code sections for other independent reasons.

23   / / /

24   / / /

25   _____

26   [4] In his FAC, plaintiff summarily alleges that defendant violated other Labor Code
     sections, including Labor Code §§ 1198, 510, 554, 1197, 1182.12, and 1194.2.  In their
27   briefing, neither party expressly analyzes whether such allegations may serve as an
     adequate basis to support the § 17200 claim.  Given those omissions, as well as the fact
28   that plaintiff's allegations concerning those sections are conclusory and unsupported, the
     court concludes that those sections are insufficient to support this claim.

### a. Plaintiff Failed to Show that He Lacks an Adequate Legal Remedy for the Violations Underlying His Labor Code Claims

In its December 7, 2020 order, the court held that plaintiff may not base his § 17200 claim on the alleged violation of Labor Code § 226.8 and § 246 because he failed to show that he lacked an adequate legal remedy for such violations. Dkt. 30 at 14, 16.

In his FAC, plaintiff adds one paragraph in support of the § 17200 claim. FAC ¶ 2. n.1. In it, plaintiff chiefly alleges that the statute of limitations for a § 17200 claim is four years, while the limitation is three years for claims brought under the Labor Code and one year for claims brought under the Private Attorney Generals Act ("PAGA"), Labor Code § 2698. Id. Thus, plaintiff says, his § 17200 claim is necessary "to recover for at least one year of damages on behalf of the putative class." Id.

The court concludes that plaintiff still fails to show that he lacks an adequate legal remedy. Importantly, plaintiff fails to identify any binding authority to support his position that an incongruity in the statute of limitations between a direct Labor Code claim and § 17200 claim premised on a Labor Code violation may serve as a cognizable basis to conclude that he lacks an adequate legal remedy for his direct claims. To the extent plaintiff relies on Audrey Heredia v. Sunrise Senior Living, LLC, 2021 WL 819159 (C.D. Cal. Feb. 10, 2021) to support that position, Dkt. 43 at 22, such reliance is misplaced. In that case, Judge Staton simply observed plaintiff's argument about differences in the statute of limitations. Id. at 5. Indeed, in that decision, she ultimately **dismissed** the subject § 17200 claim with prejudice. Id. ("For these reasons, Plaintiffs' claim for equitable restitution under the UCL is DISMISSED WITH PREJUDICE.").

Defendant, on the other hand, identifies recent district court authority explicitly ruling that "plaintiffs cannot persuasively argue that they lack an adequate remedy at law even when their claims under the California Labor Code are barred by the statute of limitations." Franckowiak v. Scenario Cockram USA, Inc., 2020 WL 9071697, at *3 (C.D. Cal. Nov. 30, 2020). Of course, Franckowiak does not bind this court. That said, the court finds it persuasive. Importantly, if plaintiff were correct that a difference in the

1    statute of limitations is sufficient to show the absence of an adequate legal remedy under

2    the Labor Code, then such showing would undermine the function of a shorter statute of

3    limitations featured in a direct legal claim.  The court finds that consequence untenable.

4        For the above reasons, the court concludes that plaintiff failed to show that he

5    lacks an adequate legal remedy for his alleged violations of Labor Code § 2802, § 1194,

6    and § 226.  Given that, the court dismisses the § 17200 claim to the extent based on

7    those sections.

8        Separate but relatedly, as explained below, the court finds that the § 17200 claim

9    premised on violation of Labor Code § 226.8 and § 246 fails for other reasons.  Thus, the

10   court need not consider the remaining allegations in paragraph two footnote one

11   concerning the purported unavailability of a legal remedy for those sections.

12       **b.    Plaintiff Failed to State a § 17200 Claim Premised on a Violation**

13            **of Labor Code § 226.8**

14       Labor Code § 226.8 makes it unlawful for an employer to engage in "willful

15   misclassification of an individual as an independent contractor."  Cal. Lab. Code §

16   226.8(a).  In its December 7, 2020 order, the court identified two deficiencies in the §

17   17200 claim premised on a violation of Labor Code § 226.8.  First, plaintiff failed to show

18   why defendant's conduct lobbying state officials for an exception from Labor Code § 2775

19   shows that it willfully violated any applicable labor law law. Dkt. 30 at 13-14.  Second,

20   plaintiff failed to show that he lacked an adequate legal remedy for a violation Labor

21   Code § 226.8.  Id. at 14-15.  Critically, the court explained that "plaintiff could have

22   pursued civil penalties for past violations of § 226.8 through the Private Attorneys

23   General Act . . ." but he chose not to do so.  Id. at 15.

24       In his FAC, plaintiff adds two allegations to support this claim.  First, plaintiff

25   alleges that he lacks an adequate legal remedy to vindicate defendant's violations of

26   Labor Code § 226.8 (and § 246) because "none of his other legal claims would afford him

27   damages or restitution" to redress defendant's willful misclassification of his employment

28   or failure to provide him sick time.  FAC ¶ 2 n.1.  Second, plaintiff alleges that "it was

35

widely discussed throughout California, after the issuance of <u>Dynamex</u> and California Labor Code § 2775 that gig economy companies such as Uber were violating the law by continuing to classify their drivers as independent contracts." <u>Id.</u> ¶ 48. To support that allegation, plaintiff cites the transcript of a hearing before Judge Chhabria in a separate action against defendant, <u>Rogers v. Lyft, Inc., et. al.</u>, 20-cv-1938-VC, as well as two new articles. <u>Id.</u>

The court concludes that plaintiff fails to state a § 17200 claim premised on violation of Labor Code § 226.8. First, the California Supreme Court has recognized that a litigant may not recover Labor Code penalties as restitution under California's Unfair Competition Law. <u>Pineda v. Bank of Am., N.A.</u>, 50 Cal. 4th 1389, 1401-02 (2010). In its opening brief, defendant asserts that Labor Code § 226.8 authorizes the recovery of only civil penalties as relief. Dkt. 37 at 24. Plaintiff fails to proffer any response to this assertion in his opposition. In any event, based on a review of Labor Code § 226.8, the court agrees that that section limits its monetary recovery to only civil penalties. Cal. Lab. Code §§ 226.8(b), 226.8(c), 226.8(g)(3).

Second, plaintiff's citations to the transcript in <u>Rogers</u> and two news articles still fail to show that defendant acted willfully when classifying him as an independent contractor. Under the Labor Code, an employer's "willful misclassification" means "avoiding employee status for an individual by voluntarily and knowingly misclassifying that individual as an independent contractor." Cal. Lab. Code § 226.8(i)(4). Critically, plaintiff's added allegation—i.e., that "it was widely discussed" that defendant was violating California law through its employment classification practices, FAC ¶ 48—says nothing about ***defendant's*** mental state. Again, plaintiff proffers that allegation in the passive voice. Given the above, the court dismisses the § 17200 claim to the extent plaintiff premises it on a violation of Labor Code § 226.8.

### c. Plaintiff Failed to State a § 17200 Claim Premised on a Violation of Labor Code § 246

Labor Code § 246 generally requires an employer to provide qualifying employees

with one hour of paid sick leave for every 30 hours worked.  Cal. Lab. Code § 246(b)(1).
To qualify, an employee must work in California for the same employer for 30 or more
days within a year from the commencement of employment.  Id. § 246(a)(1).

In its December 7, 2020 order, the court identified three deficiencies in the §
17200 claim premised on a violation of Labor Code § 246.  First, plaintiff failed to allege
that he worked 30 or more days since January 2020.  Dkt. 30 at 16.  Second, plaintiff
failed to allege that he requested to use any paid sick leave or that defendant denied
such request.  Id.  Third, plaintiff failed to allege why he lacks an adequate legal remedy
for the purported violation of this section.  Id.  The court explained that Labor Code §
248.5 permits plaintiff to report suspected § 246 violations to the Labor Commissioner,
who may then bring an action against an employer.  Id.

In his FAC, plaintiff adds two allegations to support this claim.  FAC ¶¶ 44-45.
First, plaintiff alleges that he performed deliveries "approximately 215 days" between
January 2020 and December 17, 2020.  Id. ¶ 44.  Plaintiff states that, during that period,
he worked 995.04 hours picking up and delivering food and another 103.94 hours
between delivery requests.  Id.  Based on those sums, plaintiff alleges that defendant
owes him 24 hours of sick leave.  Id.  Second, plaintiff alleges that he was sick "several
days in 2020."  Id. ¶ 45.  Plaintiff suggests that, because he was "aware" that defendant
"did not provide paid sick leave," it "would have been futile for him to request" it.  Id.

The court concludes that plaintiff fails to state a § 17200 claim premised on
violation of Labor Code § 246.  Critically, plaintiff fails to remedy the second and third
defects in this claim that the court identified in its December 7, 2020 order.

The court understands plaintiff's citation to Colopy v. Uber Techs. Inc., 2020 WL
3544982, at *3 (N.D. Cal. June 30, 2020) and James v. Uber Techs. Inc., 2021 WL
254303, at *15 (N.D. Cal. Jan. 26, 2021) for the proposition that he need not allege that
he requested sick leave to state a violation of Labor Code § 246.  Dkt. 43 at 25.

The court reviewed the cited portions of Colopy and James.  They do not alter the
court's conclusion with respect to the second defect.  In those orders, Judge Chen does

not cite any authority (aside from his own prior order) to support the subject proposition. In any event, plaintiff fails to show that he first pursued relief with the Labor Commissioner under Labor Code § 248.5 for violation of § 246 before bringing this claim. Given the above, the court dismisses the § 17200 claim to the extent plaintiff premises it on a violation of Labor Code § 246.

### d. Plaintiff Failed to State a Claim Premised on a Violation of Labor Code § 1197.1

Under certain conditions, Labor Code § 1197.1 provides that an employer who fails to pay minimum wage "shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee." Cal. Lab. Code § 1197.1(a).

In its opening brief, defendant asserts that plaintiff may not base his § 17200 claim on a violation of Labor Code § 1197.1 because Labor Code § 1197.1 "authorizes only a civil penalty for not paying employees minimum wage" and does not provide a private right of action to recover such penalties. Dkt. 37 at 27.

Plaintiff fails to proffer any response in his opposition. Given that, the court dismisses the § 17200 claim premised on a violation of Labor Code § 1197.1.

### e. The Court Dismisses the § 17200 Claim with Prejudice

In its December 7, 2020 order, the court identified a litany of deficiencies in the § 17200 claim. Dkt. 30 at 12-16. As detailed above, despite the opportunity to amend his pleadings, plaintiff failed to cure many of those deficiencies. Thus, the court finds that further amendment of this claim would be futile. Accordingly, the court will exercise its "particularly broad" discretion and dismiss the § 17200 claim with prejudice. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1072 (9th Cir. 2008).

### C. Motion to Strike Analysis

In its motion to dismiss the original complaint, defendant alternatively requested that the court strike plaintiff's class allegations. Dkt. 21 at 2. In its December 7, 2020 order, the court denied that request as moot. Dkt. 30 at 19. When doing so, the court indicated that it disfavors using a Rule 12 motion to assess the viability of class

allegations absent the opportunity for discovery. Id. at 19-20. Less than subtly, the court indicated to defendant that, if it defendant renewed its motion to strike, the court would "likely summarily deny such a motion." Id. at 20.

In its opening brief, defendant requests that the court strike plaintiff's class action allegations "to the extent the putative class includes persons bound to arbitrate." Dkt. 37 at 28. First, defendant asserts that plaintiff failed to dispute in his opposition to defendant's prior motion that "only a small number of putative class members both opted out of arbitration and are not covered by prior releases compared to hundreds of thousands of the putative class members who are bound to arbitrate their claims on an individual basis." Id. Second, defendant argues that "[t]he fact that most putative class members are bound to arbitrate necessarily precludes commonality, defeats superiority, and renders [plaintiff] atypical and an inadequate class representative because he is not bound to arbitrate." Id. Third, defendant asserts that plaintiff lacks standing to represent persons who chose not to opt out of arbitration. Id. at 30.

The court summarily denies defendant's motion to strike the above-referenced allegations. The court finds that this action's record is insufficiently developed to even entertain the propriety of the requested relief. Defendant may seek leave to file a special, limited Rule 56 motion aimed at summarily adjudicating the viability of the above-referenced allegations pertaining to putative class members bound by an enforceable arbitration provision. In that event, the parties should be prepared to brief that motion prior to any motion for class certification.

## CONCLUSION

For the above reasons, the court **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss and **DENIES** defendant's motion to strike. To summarize, the court rules on defendant's motion to dismiss as follows:

- The motion to dismiss is **DENIED** to the extent it is premised on the argument that Business & Professions Code § 7451 abates the authorities underlying plaintiff's employment misclassification allegation. Such denial is without prejudice.

Defendant may renew its abatement argument on a motion for summary judgment.

- The motion to dismiss the Labor Code § 1194 claims for failure to pay minimum wage and overtime is **DENIED**.  On a motion for summary judgment and following the opportunity for merits-based discovery on defendant's control-related practices, defendant may renew its argument that the time spent waiting on the Uber Eats App between deliveries is not legally compensable.

- The motion to dismiss the Labor Code § 226 claim for failure to provide accurate wage statements is **DENIED**.

- The motion to dismiss the Business & Professions Code § 17200 claim is **GRANTED** in its entirety.  The court **DISMISSES** that claim **WITH PREJUDICE**.

Defendant does not challenge the sufficiency of the allegations underlying the Labor Code § 2802 claim for failure to pay business expenses.  The court finds that plaintiff's amendments to that claim cure its prior deficiencies.  As a result, the following four claims remain live in this action: (1) the claim for failure to pay minimum wage; (2) the claim for failure to pay overtime wages; (3) the claim for failure to provide accurate wage statements; and (4) the claim for failure to pay business expenses.

Separately, prior to any motion for class certification, defendant may seek leave to file a limited Rule 56 motion aimed at summarily adjudicating any class allegation attempting to include putative class members bound to enforceable arbitration provision.

**IT IS SO ORDERED.**

Dated: June 21, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge